PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandante y recurrente, *v.* HUMBERTO DURÁN MANZANAL, demandado y recurrido.

*Número:* R-63-131      *Resuelto:* 21 de abril de 1965

*Héctor Martínez Muñoz* y *José Enrique Otero,* abogados de la recurrente; *Carlos D. Vázquez,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata de una reclamación presentada por una compañía aseguradora, subrogada en los derechos y acciones de su asegurada, en la cual se alega, haberse quemado y perdido totalmente tres vehículos de motor pertenecientes a la Caribe Motors Corporation que estaban bajo la guarda, custodia y posesión del demandado recurrido señor Humberto Durán Manzanal en el taller que opera éste bajo el nombre de Garaje Humberto; se alega además que la pérdida ocasionada se debió única y exclusivamente a la negligencia del demandado recurrido.

Contestó dicho demandado recurrido aceptando el hecho de haberse quemado los automóviles mientras estaban en su posesión, negando, por falta de información, la relación de aseguradora y asegurada entre la Porto Rican and American Insurance Company y la Caribe Motors Corporation y negando de propio conocimiento que la pérdida ocasionada se debiera única y exclusivamente a su negligencia. En cuanto a la causa del siniestro, alegó el demandado recurrido que tal siniestro había sido una "de carácter fortuito y desgraciado u ocasionado por fuerza mayor en el que no intervino en forma alguna en negligencia del demandado", puesto que, el demandado, en todo momento con anterioridad a la ocurrencia del fuego, había actuado con la diligencia propia de un buen padre de familia.

La demandante recurrente presentó un interrogatorio solicitando de la parte demandada la siguiente pregunta: "Diga desde que fecha el demandado Humberto Durán ocupaba el local de la calle 12 esquina I *en el cual se originó el incendio*" siendo contestada por la parte demandada recurrida en los siguientes términos: "Como 7 u 8 años antes del incendio, sin que recuerde la fecha exacta."

Durante la vista del caso, y al momento de presentar su prueba, el abogado de la demandante le informó al Tribunal lo siguiente:

"Lic. Martínez:—En este caso las partes hemos estipulado los siguientes hechos que no aparecen admitidos de las alegaciones. Hemos estipulado en cuanto al valor de los vehículos envueltos en el siniestro a que se refiere el párrafo dos de la demanda. Ese valor es cuatro mil cien dólares ($4,100) ahora, hubo un recobro, Vuestro Honor, montante a la suma de cuatrocientos diez y ocho dólares con sesenta y nueve centavos ($418.69) que representa el valor de los restos de los tres vehículos. Luego la reclamación quedaría reducida a la suma de tres mil seiscientos ochenta y uno con treinta y un centavos ($3,681.31). Los hechos alegados en el párrafo dos referentes a la póliza, los pagos efectuados a la Caribe Motors y el derecho de subrogación ha sido admitido por la parte demandada.

"Hon. Juez: (P) ¿Qué más?

"R—(Lic. Martínez) Queda por tanto la controversia reducida a determinar la responsabilidad si alguna, del demandado. En prueba directa, Vuestro Honor, vamos a ofrecer en evidencia la . . .

"Hon. Juez: ¿Del demandante? Queda sólo la responsabilidad del demandado.

"R—(Lic. Martínez) Si, señor. Como prueba directa la parte demandante ofrece la contestación número dos y la contestación número ocho prestada por el demandado a preguntas igualmente numeradas de la parte demandante mediante interrogatorio suscrito de fecha 26 de enero de 1962. Las contestaciones a las preguntas dos y ocho y ese es nuestro caso."

Las preguntas y respuestas aludidas son las siguientes:

"P. Diga para que fines se usaba el local por el demandado Humberto Durán. R. Para reparaciones de hojalatería y pintura de automóviles. P. Diga si usted realizó o no una investigación sobre la causa o causas del fuego a que se refiere esta acción, y en caso afirmativo, informe los resultados que obtuvo de dicha investigación, el nombre y dirección de las personas que intervinieron en la misma y acompañe copia de cualquier informe o informes que se le hayan rendido sobre la causa o causas del fuego. R. La causa se desconoce.

La ilustrada Sala sentenciadora, por el resultado de los testimonios aceptados como prueba del demandado recurrido, declaró probado el hecho que el fuego se originó en "el taller

conocido como 'Garage Pepín' del Sr. José Torres que quedaba contíguo al taller del demandado, propagándose en pocos minutos al taller del demandado, el cual, [el taller del demandado] quedó devorado por las llamas" y en cuanto a la negligencia, por si fuera necesario, declaró probado, "que el demandado desde 1958 tenía la instalación eléctrica de su taller dentro de tubos de hierro galvanizados dotado [*sic*] de una caja de seguridad que producía aislamiento tan pronto se originaba un corto circuito. Que asimismo, mantenía en su taller extinguidores de fuego y como precaución contra incendio la materia de pintura y 'thinner' se guardaba en un cuarto construído de zinc, fuera, en el patio, junto a las máquinas de acetileno que se afianzaban y se inspeccionaban antes de cerrar el taller".

La conclusión de la ilustrada Sala sentenciadora, en el sentido, que la relación jurídica existente entre la Caribe Motors Corporation y el Sr. Humberto Durán Manzanal era una de depositante y depositario y que la destrucción de la cosa depositada se debió a un acontecimiento de naturaleza fortuita resulta del todo correcta.

La Ley aplicable al caso son los siguientes artículos del Código Civil de Puerto Rico: El Art. 1658 dispone: "Se constituye el depósito desde que uno recibe la cosa ajena con la obligación de guardarla y de restituirla," relacionado con el Art. 1136 que dispone: "Quedará extinguida la obligación que consiste en entregar una cosa determinada cuando ésta se perdiere o destruyere sin culpa del deudor y antes de haberse éste constituído en mora", el Art. 1137 que dispone: "Siempre que la cosa se hubiese perdido en poder del deudor, se presumirá que la pérdida ocurrió por su culpa y no por caso fortuito, salvo prueba en contrario . . ." y el Art. 1058 que dispone: "Fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieren podido preverse, o que previstos, fueran inevitables."

■ Se entiende que la mejor definición que existe del caso fortuito (*casus fortuitus*) es la contenida en la Ley XI del Título XXXIII de la Setenta Partida que dice: "Otrosí decimos que *casus fortuitus* en latín tanto quiere decir en romance como ocasión que acaesce por aventura, de que non se puede home anteveer; et son estos: derribamiento de casas o fuego que se acendiese a sohora, o quebrantamiento de navío o fuerza de ladrones de enemigos." Vide: II Las Siete Partidas 418 (edición del 1846 de la Imprenta Panckoucke de París). Los requisitos que se exigen para determinar si cualquier suceso constituye un "caso fortuito" son los siguientes: (1) Que el hecho o acontecimiento que lo produce no dependa de la voluntad del llamado a servir, ni sea imputable a éste por haberse originado en un accidente *fatum fatalitas;* (2) que el hecho sea imprevisto o inevitable, en el sentido, de hallarse fuera de la diligencia razonable y habitual del obligado; (3) que el incumplimiento presuponga imposibilidad y no mera dificultad.

■ El principio de irresponsabilidad del depositario cuando la cosa se pierde por caso fortuito, como es el caso de un fuego originado en un local contiguo al del depositario, está claramente establecido por la más confiable glosa del Derecho civil. Empecemos, por los aspectos generales de la cuestión: "El sistema tradicional, reflejado en los textos romanos y en nuestra legislación de Partidas, consistía en imponer al depositario, como regla general, únicamente las responsabilidades del dolo y de la culpa lata, pero atribuyéndole, en casos especiales, las de la culpa leve y aun las del caso fortuito (si se hubiere estipulado así). El Código francés adoptó un sistema distinto, consistente en imponer al depositario, por regla general, no la culpa apreciada en abstracto (diligencia de un buen padre de familia) sino la culpa *in concreto* (diligencia que la persona misma del depositario acostumbra poner en el cuidado de sus cosas), aunque restableciendo en ciertos casos excepcionales la aplicación del

principio de la culpa leve en abstracto. Pues bien, nuestro Código español no ha hecho suyo ninguno de los anteriores sistemas. Se limita a declarar que la responsabilidad del depositario en cuanto a la guarda y la pérdida de la cosa se regirá por lo dispuesto para las obligaciones en general en el título I del libro IV—art. 1766, párrafo segundo—[1666 nuestro] y esto equivale a imponer al depositario la diligencia que se exprese en el contrato o, en su defecto, la correspondiente a un buen padre de familia—art. 1104—[1057 nuestro], sin la distinción de casos ni las clasificaciones de la culpa que se admitían en la doctrina tradicional": 4 Castán—*Derecho Civil Español Común y Foral* 620 (7a. edición Reus 1952). Nuestro Código—dice Puig Peña—"Se limita a decir que la responsabilidad del depositario en cuanto a la guarda (y a la pérdida de la cosa), se regirá por lo dispuesto en el título I del libro IV; o ser, que se remite en esta cuestión a la teoría general de la responsabilidad en las obligaciones—arts. 1100 al 1107—[1053–1060 nuestros]. Esto equivale a imponer al depositario, según dijimos, la actividad prometida en el contrato o deducida de la naturaleza de la obligación y propia de un buen padre de familia. Siempre, pues, que ello no se observe, incurrirá en responsabilidad, sin hacer caso de las clasificaciones que admitía la doctrina clásica." IV-II Puig Peña: *Tratado de Derecho Civil Español* 434 (edición de la Revista de Derecho Privado de 1951).

"En cuanto al caso fortuito, sobrevenido antes de que hubiese expirado el plazo del depósito, es de aplicar la regla general declaratoria de la irresponsabilidad: el depositario tiene de común esta circunstancia con todos los deudores de cuerpo cierto; *res perit domino*. La prueba del caso fortuito es evidente que corresponde al depositario; doctrina repetidamente sancionada por el Tribunal Supremo (España) desde la sentencia de 17 de diciembre de 1859:" 11 Manresa—*Comentarios al Código Civil Español*—679 (quinta edición Reus de 1950).

■ Parece que la demandante recurrente descansó en la presunción que establece el Art. 1137 de nuestro Código Civil, en el sentido, que al perecer la cosa en poder del deudor (en este caso, el depositario) *se presumirá* que la pérdida ocurrió por culpa del depositario y no por caso fortuito *salvo prueba en contrario* y en el posible error de la contestación de la pregunta número 1 del interrogatorio presentado por la parte demandante recurrente el 29 de enero de 1962, sin darse cuenta que en la pregunta se afirmaba que el incendio se había originado en el local del demandado recurrido Humberto Durán. La posible admisión queda sin ningún efecto jurídico cuando se examinan las defensas segunda y tercera de la contestación enmendada, en las cuales se alega, que el siniestro en que se funda la reclamación del demandado fue uno de carácter fortuito y desgraciado en el que no intervino en forma alguna la negligencia del demandado recurrido y aun en el caso de haberse originado en el propio taller del demandado recurrido, extremo que no fue declarado por la ilustrada Sala sentenciadora, se alegó y probó por el demandado recurrido la diligencia propia del buen padre de familia.

*Por las razones expuestas, se confirma la sentencia de 18 de abril de 1963 dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan.*