RICARDO HERNÁNDEZ MORALES, demandante y recurrente, *v.* GREGORIO RODRÍGUEZ SOTO y NORTHERN ASSURANCE CO. y OTROS, demandados y recurridos; DEMETRIO PILLOT, demandante y recurrente, *v.* GREGORIO RODRÍGUEZ SOTO y NORTHERN ASSURANCE CO. ET AL., demandados y recurridos.

*Números:* R-66-231, R-66-187      *Resueltos:* 23 de abril de 1969

*Antonio Andino Elías* y *A. J. Amadeo Murga,* abogados de los recurrentes; *Rafael A. González,* abogado de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Luego de depositados unos vehículos en un establecimiento con el fin de que fueran reparados corresponde al dueño del establecimiento establecer que los daños sufridos por los vehículos con motivo de un fuego ocurrido en dicho sitio, no se debió a su culpa o negligencia y al no lograrlo, responde por tales daños. Por esa razón debe revocarse la sentencia en estos casos que negaron tal responsabilidad.

En su demanda radicada en contra de los demandados-recurridos alegó Demetrio Pillot que estando un vehículo suyo marca Cadillac en la posesión y control y custodia de Grego-

rio Rodríguez Soto resultó en pérdida total como consecuencia de un fuego que se inició en un gabinete de botellas perteneciente a la codemandada Pepsi Cola Bottling Company of Puerto Rico, (en lo sucesivo designada como Pepsi Cola), fuego que fue negligentemente ocasionado por los codemandados Rodríguez Soto y la Pepsi Cola. Alegó una pérdida de $4,500 y que las compañías demandadas habían expedido y tenían pólizas en vigor cubriendo la negligencia de los anteriores dos demandados. Contestaron Rodríguez Soto y la Northern Assurance Company admitiendo la alegada posesión del vehículo, la ocurrencia de fuego en el sitio y equipo alegado y la alegación sobre los seguros, excepto que la Northern Assurance Company no respondía con las otras demandadas por los daños sufridos por el demandante. Negaron la responsabilidad de Rodríguez Soto y la cuantía de los daños.

En relación con una demanda parecida radicada por el recurrido Ricardo Hernández Morales en contra de Rodríguez Soto, en la cual los daños por destrucción del vehículo Impala del demandante se alegaron ascender a $1,267, negó Rodríguez Soto la destrucción total del vehículo; que el incendio se debiese a su culpa o negligencia y la cuantía de los daños. En contrario alegó que se debió a la negligencia de la Pepsi Cola en cuya máquina se originó el fuego. Rodríguez Soto en este caso radicó demanda contra tercero en contra de la Pepsi Cola alegando la reclamación que le ha hecho Hernández Morales y que de ser responsable, Pepsi Cola le es responsable porque el incendio en cuestión se originó en su máquina expendedora de refrescos la cual fue instalada negligentemente por ella en el establecimiento-taller del demandado. Contestó Pepsi Cola ambas demandas negando los hechos.

En otras demandas similares la Northern Assurance Company aceptó la alegación de que el establecimiento de Rodríguez Soto estaba cubierto por una póliza de responsabilidad pública suscrita por dicha compañía.

Vistos los casos en forma consolidada con los otros similares, concluyó el juez de instancia que (1) las partes estipularon que los daños sufridos por Pillot ascendieron a $1,200 y los de Hernández Morales a $800, a los que tendrían derecho de declararse con lugar sus demandas; (2) ocurrió un fuego en el garage de Rodríguez Soto en la noche del 17 de febrero de 1963; (3) diez días antes del incendio, a petición de Rodríguez Soto, la Pepsi Cola colocó en dicho garage una máquina expendedora de refrescos la que no pudo ser puesta a funcionar porque no había disponible un receptáculo para conectarla a la corriente eléctrica por lo que un hijo de aquél expresó a los representantes de la Pepsi Cola que su padre se encargaría de hacer la instalación necesaria; (4) Pepsi Cola no tiene empleado ni personal alguno para hacer tales instalaciones eléctricas, siendo su negocio el entregar la máquina con botellas llenas y en ir a sustituir las vacías por otras llenas según así se lo requiere el cliente. En cuanto al origen del fuego, concluyó el tribunal de instancia que:

"La prueba más confiable que hay en el récord no refleja, en verdad, cuál fue el origen del incendio. Ciertamente, no se originó en la máquina de refrescos toda vez que aun después del incendio, dicha máquina todavía funcionaba. La teoría de Gregorio Rodríguez Soto, según surge del testimonio pericial prestado por su testigo Arcadio Aponte, fue a los efectos de que el incendio se originó en la instalación que suplía energía eléctrica a la máquina de refrescos. La prueba al efecto constituye, sin embargo, una mera especulación y no damos crédito a la misma.

El Tribunal no da crédito, tampoco a la prueba aportada por Rodríguez Soto a los efectos, de que dicha instalación fue verificada por empleados de la Pepsi Cola Bottling Co.

El propio Gregorio Rodríguez Soto declaró que no inspeccionó la instalación eléctrica a pesar de que la máquina de refrescos fue colocada, según sus propias instrucciones, en un local contiguo al sitio donde Rodríguez Soto guardaba las pinturas, el 'thinner' y otro material inflamable que usaba en su garage.

Todos los demandantes fallaron en probar cuál fue la causa próxima, eficiente y productora del daño.

En el momento del incendio, ni la máquina de refrescos ni la instalación que llevaba la energía eléctrica a ésta, estaba bajo control de Pepsi Cola Bottling Co., sino más bien estaban ambas bajo el control de Gregorio Rodríguez Soto."

Desestimó todas las demandas, inclusive las dos que motivan este recurso, porque "No habiendo los demandantes demostrado acto alguno de culpa o negligencia imputable a los demandados es forzoso concluir que no probaron su caso." Exoneró a la Pepsi Cola de responsabilidad porque "actuó como lo habría hecho un buen padre de familia. No hay indicación de que el incendio se hubiese originado en la máquina de refrescos." Por último, determinó que "No es aplicable a este caso la doctrina de *res ipsa loquitur* ni tampoco es imputable a Rodríguez Soto presunción de culpa alguna."

El tribunal de instancia basó su decisión en el caso de *P.R. & American Ins. Co. v. Durán Manzanal*, 92 D.P.R. 289 (1965), en el que resolvimos que el depositario de unos vehículos en su establecimiento no era responsable por la pérdida de los mismos que se quemaron mientras estaban en su posesión. La razón para negar la responsabilidad en ese caso fue que la prueba demostró que el incendio se inició en una propiedad contigua perteneciente a otra persona y se propagó a la del depositario quien había tomado todas las precauciones razonables para evitar un fuego en la suya. De manera que el tribunal estaba ampliamente justificado en concluir que la destrucción de la cosa depositada se debió a un acontecimiento de naturaleza fortuita, sin culpa del depositario, en armonía con lo dispuesto por los Arts. 1658, 1136, 1137 y 1058 del Código Civil (31 L.P.R.A. secs. 4621, 3191, 3192 y 3022.) Dijimos en este caso que: "El principio de irresponsabilidad del depositario *cuando la cosa se pierde por cosa fortuita, como es el caso de un fuego originado en un local contiguo al del depositario, está claramente establecido por la*

*más confiable glosa del Derecho Civil*." (Énfasis nuestro.)

Apuntan los recurrentes que el tribunal de instancia incidió (1) al no concluir que Rodríguez Soto "no descargó el peso de la prueba de que fue diligente en la conservación y protección de los vehículos"; (2) en la apreciación de la prueba. Tienen razón.

1-2 En el caso ante nos la prueba demostró que el incendio se originó dentro del establecimiento del depositario Rodríguez Soto, aquí recurrido. El celador del establecimiento testificó que el fuego salía de la máquina de refrescos y "se corría para donde están 'de' so' de las pinturas" en la cercanía de la máquina y que ese material se incendió. Fue conflictiva con respecto a quién instaló la máquina de expendio de refrescos dentro de su establecimiento. Surge de la prueba que el fuego no se originó en la máquina misma pues ésta se probó luego de ocurrido el fuego y funcionaba bien. El tribunal dio crédito, con razón a nuestro juicio, a la prueba de que Pepsi Cola no puso a funcionar la máquina el día que la llevó y colocó en un lugar del establecimiento del depositario porque "no había disponible un receptáculo para conectarla a la corriente eléctrica" y que un hijo del depositario "expresó . . . que Rodríguez Soto se encargaría de hacer la instalación necesaria para poner a funcionar la máquina de refrescos." Como el propio depositario admitió que la máquina funcionó por varios días antes del fuego, y que él la había solicitado porque le produciría algún ingreso (y presumiblemente constituía una conveniencia para sus empleados), es razonable concluir que el depositario o un agente suyo hizo la instalación eléctrica en cuestión. Además, la prueba también demostró que la referida instalación se hizo contigua al cuarto que se utilizaba para almacenar material inflamable como pintura y el líquido adelgazador. El propio perito del depositario testificó que la instalación era defectuosa e impropia, sin la protección requerida de "Un panelito con 110. Un panel para distribuir . . . un interruptor de 20

amperios." Testificó, además, que el alambre usado no era suficiente pues "al ir calentando da un corto circuito . . . . Ese alambre en calentar podría tardar varios días . . . la cubierta del alambre ahí mismo en lo que está clavado provoca que se queme . . . . Las tachuelas que se usaron son galvanizadas, que no es la tachuela adecuada para eso, hay otra . . . una tachuela que viene con aislación especial." Puede deducirse del testimonio de este testigo que no tan sólo se llevó a cabo una instalación eléctrica para hacer funcionar las máquinas de refrescos con material inadecuado sino que lo que es peor, con alambre que tendía a calentarse y al hacerlo a crear un corto circuito con el resultado que su cubierta aislante se quemaba precisamente donde estaba unido a unas tachuelas no aislantes, todo esto en la cercanía de material inflamable almacenado.

Lo expuesto demuestra que el depositario no rebatió la presunción provista por el Art. 1137 del Código Civil, *supra*, de que las pérdidas en cuestión ocurrieron por su culpa. Véanse, *Rivera* v. *San Juan Racing Assoc., Inc.*, 90 D.P.R. 414, 421 (1964), Escolio 6, y *Cabinero* v. *Cobián Theaters*, 81 D.P.R. 960 (1960). Su propia prueba tendió a establecer más bien que él, o un agente suyo, realizó la referida instalación negligentemente y que el fuego surgió cerca de la máquina y se corrió al material inflamable almacenado allí cerca. Es razonable deducir que un corto circuito en la referida instalación ocurrió en la forma y manera indicada por el perito del depositario recurrido y así fue como se originó el fuego, de manera que toda la prueba tendió a establecer que el siniestro se debió a la culpa y negligencia del depositario recurrido.

*En tal virtud, debe revocarse la sentencia dictada por el tribunal de instancia y en su lugar dictar otra declarando con lugar las demandas de los recurrentes, condenándose a los recurridos a pagar a Demetrio Pillot la suma de $1,200 más $300 de honorarios de abogado y a Ricardo Hernández*

*Morales la suma de $800 más $200 de honorarios de abogado, más las costas incurridas por ambos litigantes.*