ÁNGEL DANIEL RIVERA ET AL., demandante y recurridos, *v.* CARIBBEAN HOME CONSTRUCTION CORPORATION, demandada y recurrente.

*Número:* R-66-303          *Resuelto:* 28 de septiembre de 1971

*Carlos A. Todd* y *Octavio Jiménez,* abogados de la recurrente; *Carmelo Ávila Medina* y *Roberto Ávila Rivera,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este recurso comprende varias acciones consolidadas de daños y perjuicios instadas por ocho demandantes residentes todos en la Urbanización Ponce de León en Guaynabo. La prueba es común a todas y se vieron conjuntamente en el tribunal de instancia. La demandada es la constructora de la mencionada urbanización. Las demandas se basan en daños materiales y morales sufridos por los demandantes con motivo de haberse inundado sus casas con agua y lodo el día 5 de junio de 1964 debido a defectos de construcción de la urbanización, específicamente en la calle en que los demandantes residen.

El tribunal sentenciador declaró con lugar la demanda en cuanto a cinco de las causas de acción; la desestimó en cuanto a dos; y por inadvertencia dejó de proveer en cuanto a una. El tribunal concedió daños a cuatro matrimonios demandantes por valor de $6,000.00 a cada uno y $3,300.00 a otro, para un total de $27,300.00. También concedió $2,500.00 para honorarios de abogado. La demandada ha construido ocho urbanizaciones en el área metropolitana de Puerto Rico, las cuales comprenden "alrededor de seis o siete mil viviendas" según declaró su Ingeniero Jefe, el Sr. José L. del Campillo.

La demandada-recurrente señala cuatro errores. En el primero le imputa error al tribunal de instancia al hallar a la demandada responsable por los daños causados, cuando —argumenta—los planos de esa urbanización fueron apro-

bados por la Junta de Planificación de Puerto Rico y por la Federal Housing Administration y por otras oficinas públicas tales como las Autoridades de Acueductos y de Fuentes Fluviales.

En el segundo error argumenta que los daños no pueden atribuirse a la demandada sino a un caso de fuerza mayor consistente en lluvias fuertes que cayeron en aquel lugar los días 4 y 5 de junio de 1964. En el tercer señalamiento se imputa error al tribunal por no aceptar la defensa de que las calles y el sistema de alcantarillado pluvial de la urbanización Ponce de León son responsabilidad del Municipio de Guaynabo. En el cuarto señalamiento se impugnan las cuantías concedidas.

■ Antes de discutir los errores señalados parece necesario aclarar que en español y en Derecho civil no debe utilizarse el barbarismo "acto de Dios" cuando está disponible la frase del Derecho civil, que es también correcta en español, de *fuerza mayor*, expresión que viene del latín *vis major*. *Vis* en latín quiere decir fuerza. La expresión francesa equivalente es "force majeure" y la italiana "forza maggiore." Black en su diccionario, *Law Dictionary*, 4ta. ed., luego de definir la expresión iglesa "act of God" como un suceso ocasionado exclusivamente por las fuerzas naturales y sin que medie intervención humana alguna, dice que en el Derecho Civil se llama *vis major* y define esta locución en igual forma que "act of God."

■ Existe, sin embargo, una generalizada confusión en el uso de los términos caso fortuito y fuerza mayor. Como se sabe, se puede incurrir en responsabilidad civil por culpa contractual y por culpa extracontractual, llamada también esta última culpa aquiliana porque fue sancionada en Roma por la Ley Aquilia. Pero como para que haya culpa—en el sentido lato de la palabra—tiene que haber intención de dañar (actos dolosos) o por lo menos negligencia (actos culposos), cuando el suceso que causa el incumplimiento de la obliga-

ción o el daño, según sea el caso, no se puede prever o si previsto es inevitable, generalmente no se incurre en responsabilidad. Decimos generalmente porque el derecho de daños y perjuicios no es tan sencillo que pueda aprisionarse en unas breves normas, aunque éstas sean, en principio, correctas. Por ejemplo, la básica relación causal culpa-daño-responsabilidad admite excepciones, como lo es el caso de la responsabilidad sin culpa, llamada también responsabilidad absoluta y responsabilidad objetiva.[1] También, como veremos, no todo suceso inevitable pero previsto o que se pueda prever, exime necesariamente de responsabilidad.

■ Regresando al pensamiento que en este momento queremos exponer, ese suceso eximente de responsabilidad—por razón de que no puede preverse o que previsto no puede evitarse—se llama caso fortuito o fuerza mayor. Este concepto amplio, que por estar basado en la equidad puede operar en todo el campo del derecho,[2] tiene como su aplicación más importante la de eximir de responsabilidad en el cumplimiento de las obligaciones. En este sentido puede definirse como aquel suceso no imputable al deudor que impide el cumplimiento de la obligación. Nuestro Código Civil, igual que el español, recoge dicho concepto—caso fortuito o fuerza mayor—al tratar de la naturaleza y efecto de las obligaciones. En ese contexto su Art. 1058 (31 L.P.R.A. sec. 3022) dispone que fuera de los casos mencionados en la ley o en la obligación, "nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables."

---

[1] Sobre responsabilidad sin culpa véase Castán, *Derecho Civil Español, Común y Foral,* Tomo 1, Vol. 2, 10ma. ed. (1963), págs. 612–619. En la 9na. ed., mismo tomo y vol. págs. 484–497.

[2] Sobre la función rectora de la equidad en el derecho véase Castán, *La Formulación Judicial del Derecho,* 2da. ed., Reus, Madrid (1954), capítulos II y III y Allen, *Law in the Making,* 7ma. ed. (1964), capítulo V, especialmente las págs. 394–399. También *Silva* v. *Comisión Industrial,* 91 D.P.R. 891, 898–904 (1965) y *Don Quixote Hotel* v. *Tribunal Superior,* 100 D.P.R. 19 (1971).

Tanto de antiguo como en relación con los códigos modernos se ha discutido si los términos caso fortuito y fuerza mayor son sinónimos o si tienen significado diferente. El tratamiento del asunto por los códigos no es uniforme. (³) Entre los tratadistas, la falta de unanimidad de criterio es más acusada. La mayor parte de ellos ve en las expresiones "caso fortuito" y "fuerza mayor" términos sinónimos. Así, por ejemplo lo entiende Valverde. (⁴) Por su parte, Manresa opina que dentro del concepto general de caso fortuito están comprendidos éste propiamente dicho y el de fuerza mayor. También cree que tanto uno como otro pueden ser ordinarios o extraordinarios. (⁵) Castán señala que en derecho español la opinión dominante rechaza la distinción entre esos dos términos, pero algunos, dice, creen que a veces la distinción es necesaria en vista del articulado del Código. Da como ejemplos los Arts. 1784 y 1905 del Código Civil Español. (⁶) El primero releva de responsabilidad a los fondistas y mesoneros por la pérdida de los efectos introducidos por los viajeros en las fondas y mesones cuando la misma provenga de fuerza mayor. El segundo, en parte, exime de responsabilidad al poseedor de un animal por los perjuicios que éste causare si el daño proviene de fuerza mayor. Los artículos equivalentes del Código puertorriqueño son idénticos a los españoles. Véase el escolio 6. Salvo esos casos particulares que menciona Castán parece estar de acuerdo con la mayoría de los autores en que la distinción entre caso fortuito y fuerza mayor, en sus propias palabras "puede considerarse irre-

---

(³) Para un estudio de derecho comparado sobre esto y para una amplia discusión del tema en sí véase el luminoso trabajo *El Caso Fortuito Ante el Derecho Civil* de los autores Coustasse e Iturra, Editorial Jurídica de Chile, Santiago de Chile (1958).

(⁴) *Tratado de Derecho Civil Español*, Tomo 3, 4ta. ed. (1937), pág. 95.

(⁵) *Comentarios al Código Civil Español*, Tomo 8, Vol. 1, 5ta. ed. (1950), pág. 205.

(⁶) Equivalentes a los Arts. 1684 y 1805 de Puerto Rico, 31 L.P.R.A. secs. 4694 y 5144.

levante, ya que ambos fenómenos producen la liberación del deudor."[7] Badenes Gasset, luego de señalar, lo que en nuestro estudio hemos comprobado, que los autores que distinguen el caso fortuito de la fuerza mayor no están acordes en cuanto al criterio diferencial, opina que tal distinción no tiene interés práctico (pues a ambos la ley les reconoce o asigna igual consecuencia: la liberación del deudor).[8]

◼ Entre los tratadistas que han ejercido la peligrosa función de definir existen contradicciones, como antes dijimos. Algunos opinan que el caso fortuito incluye los fenómenos naturales como el rayo, terremoto, inundaciones y la tempestad y que la fuerza mayor comprende hechos de un tercero. Otros escritores lo entienden a la inversa; esto es, que la fuerza mayor comprende los fenómenos naturales y que el caso fortuito comprende la acción de un tercero por la cual el deudor no debe responder. Y, como vimos por la anterior cita de Manresa, éste opina que el caso fortuito comprende el de fuerza mayor.

En el año 1920 este Tribunal, en *Vidal* v. *American Railroad Co.*, 28 D.P.R. 204, 210 (1920), luego de utilizar ambos términos como sinónimos al decir que "aunque el incendio puede ser considerado como *fortuito o fuerza mayor*, sin embargo no todo incendio tiene *ese carácter*, sino cuando no se pudo precaver ni resistir," (subrayado nuestro) intentó distinguir entre fuerza mayor y caso fortuito y se expresó como sigue:

"*Fuerza mayor* es *el acontecimiento que no hemos podido precaver ni resistir*; como por ejemplo la caída de un rayo, el granizo, la inundación, el huracán, la irrupción de enemigos, el acometimiento de ladrones . . . y *es caso fortuito el suceso inesperado o la fuerza mayor* que no se puede precaver ni resistir . . . . Tales son las inundaciones, torrentes, naufragios, incendios, rayos, violencias, sediciones populares, ruinas de edi-

---

[7] Castán, *Derecho Civil Español, Común y Foral*, Tomo 3, 10ma. ed. (1967), pág. 180.

[8] *El Riesgo Imprevisible*, Bosch, Barcelona (1946), pág. 103.

ficios causadas por alguna desgracia imprevista y otros aconte-
cimientos semejantes." (Bastardillas nuestras.) (Citas omitidas.)

Tenemos que admitir que la diferencia entre ambos tér-
minos no quedó allí muy claramente establecida.

Los citados autores Coustasse e Iturra (véase el escolio
3) al discutir sobre la distinción entre el caso fortuito y el
de fuerza mayor señalan que la jurisprudencia española ha
identificado ampliamente el caso fortuito con el de fuerza
mayor y citan la sentencia de 10 de noviembre de 1924 en
la cual el Tribunal Supremo de España afirma que el *caso
fortuito* es, en el orden jurídico, aquel suceso inopinado *o
fuerza mayor* que no se puede prever o que, aún previsto
no puede ser resistido en sus efectos. Concluyen dichos auto-
res que "En realidad, la discusión sobre este particular solo
constituye una controversia de matiz escolástico, sin asiento
alguno en la realidad jurídica." [9]

Sobre una serie de distinciones que se han tratado de
establecer, Giorgi observa que "carecen de exactitud científica
y de importancia práctica." [10] En Puerto Rico, el Profesor
Guaroa Velázquez ha escrito: "A la falta o culpa se opone
el caso fortuito o la fuerza mayor—distinción que, es opor-
tuno decirlo, apenas tiene interés práctico, ya que a ambas
nociones la ley le asigna idénticos efectos." [11]

Castán, al discutir las transgresiones jurídicas y sus con-
secuencias en el ámbito civil menciona el caso fortuito entre
los supuestos en que no surge la obligación de resarcimiento
y expresa:

"Caso fortuito (*casus*) es todo suceso no culposo. Nuestro
Código lo considera como suceso imposible de prever, o que,
previsto, fuera inevitable (art. 1.105).

---

[9] Coustasse e Iturra, obra citada, pág. 69.

[10] *Teoría de las Obligaciones en el Derecho Moderno*, Vol. 2, pág. 34
y ss., citado por Coustasse e Iturra, pág. 70.

[11] G. Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño*,
Equity Publishing Corp. (1964), pág. 150.

No sólo es caso fortuito un acontecimiento natural, pues también los actos humanos pueden tener la consideración de casos fortuitos respecto del agente o de un tercero cuando ni sobre aquél ni sobre éste pese culpa alguna." [12]

Puig Brutau, a nuestro juicio, con muy buen sentido escribe:

"En realidad, más que la especulación acerca de las diferencias entre caso fortuito y fuerza mayor, según lo que sean por sí tales fenómenos, que es una tarea bastante irreal y arbitraria, habría que atender a lo único que en Derecho tiene razón de ser: al distinto grado de fuerza con que deba imponerse y mantenerse la responsabilidad del obligado según criterios de política jurídica." [13]

Por no ser necesario no vamos nosotros a tomar bando ahora en esa discusión "escolástica," "irreal" y "arbitraria." A los efectos del segundo error señalado por la recurrente vamos a entender que sostiene que está exenta de responsabilidad por tratarse de un *caso fortuito o de fuerza mayor*. Así quedan cubiertos todos los matices posibles de ambas expresiones.

■ Como indicamos antes, el primer señalamiento de error es al efecto de que los planos de la Urbanización Ponce de León fueron aprobados por las oficinas públicas competentes y que ello exime de responsabilidad a la demandada-recurrente. No tiene razón. En *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961) examinamos una contención igual— que el Negociado de Permisos había aprobado los planos— y allí dijimos, a la pág. 898:

"La aprobación del Negociado de Permisos significa que el plano aprobado cumple con los requisitos *mínimos* que exige la ley (y la reglamentación hecha por autoridad de ley) pero en modo alguno es una capa de inmunidad contra responsabilidad civil." (Bastardillas nuestras.)

---

[12] Obra citada, Tomo 1, Vol. 2, 10ma. ed. (1963), pág. 618.

[13] *Fundamentos de Derecho Civil*, Tomo 1, Vol. 2, Bosch, Barcelona (1959), pág. 444.

Es fácil entender por qué esto es así. La autoridad pública, la cual tiene que velar por la seguridad y el bienestar general, tiene que exigir ciertos requisitos mínimos a los constructores pues de no hacerlo es concebible que haya quién se propusiese hacer, e hiciese, casas y urbanizaciones sin ellos, como de hecho ocurría antes de que se incorporaran a nuestro ordenamiento jurídico los principios básicos del urbanismo y la planificación. Pero esos requisitos mínimos que exigen las autoridades estatales y federales son solamente eso: requisitos mínimos y no constituyen una garantía de la obra ni conceden inmunidad a los constructores, como indicamos en *Santaella Negrón* v. *Licari*, supra. En otras jurisdicciones se ha resuelto en forma igual. *Girard* v. *Fine*, 85 N.Y.S.2d 418, 419 (1948); *Montgomery* v. *Kimbrough Homes*, 59 So.2d 273, 276 (1952); *Fox* v. *Webb*, 105 So.2d 75, 80 (1958).

Discutiremos conjuntamente los señalamientos de error segundo y tercero. En cuanto al segundo señalamiento la posición de la demandada es que un suceso natural no imputable a ella—unas fuertes lluvias que produjeron una inundación—ocasionó los daños y que por consiguiente ella no ha incurrido en responsabilidad civil pues no se le puede suponer culpa o negligencia.

Es necesario considerar los hechos—tarea imprescindible para decidir—para ver si dicho suceso natural, las fuertes lluvias y sus consecuencias, eran o no previsibles en el lugar en donde se construyó la Urbanización Ponce de León y en el lugar en donde se hicieron las casas de los demandantes. Eso y la construcción original del alcantarillado pluvial en aquel sitio nos contestará la interrogante de si se le puede imputar o no culpa o negligencia a la demandada.

Los hechos, en breve, son los siguientes. Ubicación de la urbanización: Las casas de los demandantes están sitas en la Calle 20 de la Urbanización Ponce de León. Dicha urbanización está en jurisdicción de Guaynabo. Guaynabo,

localizado cerca y al sureste de Bayamón, cerca y al suroeste de Río Piedras y al norte de Aguas Buenas, está, como veremos, en una de las áreas en que más llueve en Puerto Rico. Volveremos más adelante a este asunto de las lluvias.

Topografía de los terrenos: La prueba demostró que los terrenos en donde se construyó la Urbanización Ponce de León no se inundaban antes de ser "desarrollados" y "replanteados" por los constructores. El agua de lluvia tenía maneras naturales de drenar, especialmente vía la Quebrada Dos Frailes. Al "replantear" los terrenos con las máquinas, bajaron los sitios altos y llenaron los bajos. Esto alteró los medios de drenaje natural que los terrenos tenían.

La Calle 20: La Calle 20 solo tiene 300 metros de largo; es el sitio más bajo de las urbanizaciones Ponce de León y Muñoz Rivera, que son contiguas y ambas fueron hechas por la recurrente; y dicha Calle 20 por ser el lugar más bajo de ambas urbanizaciones mencionadas recibe o puede recibir agua pluvial de ambas urbanizaciones, especialmente si llueve fuerte. Vista la situación física de los terrenos antes y después de desarrollados y la de la Calle 20, pasemos a examinar lo relativo a las lluvias en aquel sector.

Incidencia de las lluvias en aquel lugar: Sobre las lluvias la prueba fue de lo más confiable posible. Declaró un climatólogo del Negociado del Tiempo, el Sr. Calvesbert, presentado por ambas partes. Los hechos ocurrieron el 5 de junio de 1964. No hay estación del Negociado en Guaynabo, pero para los efectos del caso es como si la hubiese pues hay una en Monacillos, como a milla y media al norte de la Urbanización Ponce de León. También hay otra en Cataño y otra en el aeropuerto en Isla Verde. No hay duda de que en Guaynabo y Río Piedras llovió fuerte el día de los hechos. "Sobre lo normal" declaró el perito. De las 8 A.M. del 5 de junio de 1964 a las 8 A.M. del día 6 cayeron 2.41" de lluvia en Río Piedras. En los días junio 4 y 5 cayeron 4.00" en Monacillos. ¿Es esa cantidad de lluvia *en ese sector* imprevista, o insólita,

o inaudita? No lo es; y esto es determinante para juzgar si los constructores incurrieron en culpa o negligencia, como más adelante explicamos. Veamos la incidencia de lluvia en aquel lugar. En otra ocasión, de las 8 A.M. del 16 de mayo de 1965 a las 8 A.M. del día 17 cayeron en Río Piedras 4.23″ de lluvia. El 8 de mayo de ese año cayeron 2.66″. Del 1° al 2 de julio del mismo año cayeron 3.22″.

De la anterior prueba suministrada por el climatólogo se deduce claramente que en aquel sector las lluvias fuertes y "sobre lo normal" no son imprevistas ni insólitas, sino que por lo contrario son previsibles y son de esperarse con relativa frecuencia. Lo cual le quita a esas lluvias en ese lugar la naturaleza de caso fortuito o fuerza mayor. No se trata de lluvias fuertes que ocurren una o dos o tres veces en una generación. Por el contrario, en aquel lugar ocurren con bastante frecuencia. De hecho, ocurrieron dos veces en un solo mes: La Calle 20 se inundó el 5 y el 14 de junio de 1964. Pero una vez que, luego de la segunda inundación, los constructores corrigieron el drenaje pluvial de esa calle al abrir varios tragantes adicionales en el piso de la calle, la misma no se volvió a inundar. Todo lo anterior demuestra que allí las lluvias fuertes son previsibles y la inundación era evitable. También surge del récord que en Garden Hills, en donde también se inundaba, luego de que los mismos constructores instalaron un tubo más grande para el desagüe no han habido más inundaciones.

Como bien señalan Coustasse e Iturra, ante los hechos naturales, su cualidad de imprevistos no es absoluta sino que es relativa y varía en cada caso según lo acostumbrado o desacostumbrado del suceso. Eso y la actitud que tenga ante ellos el ente responsable, esto es, la prudencia y diligencia, o falta de ellas, que ante la posibilidad de que ocurran demuestre quién puede ser responsable civilmente, son elementos que hay que considerar antes de imputar responsabilidad o eximir de ella. El constructor no sabe si dentro de un año

exacto va a llover, o va a soplar viento, o va a ocurrir un temblor de tierra. Eso no lo puede prever. Pero sí sabe que esos fenómenos ocurren con relativa frecuencia y es su deber al construir tomar las medidas que aconseja la prudencia y la ciencia para precaver desgracias y ruinas. Claro, eso se entiende dentro de razón. Hay fenómenos naturales tan vastos o tan fuertes cuyos terribles efectos la ciencia humana no puede evitar, pero la razón y los propios hechos demuestran que el caso de autos no es uno de esos.

Los antes citados autores escriben:

"Lo que configura lo fortuito no es el hecho mismo sino la manera cómo él se presenta. Tomemos el ejemplo de una inundación: producida ésta en Santiago de Chile, constituye un hecho insólito, desacostumbrado, inopinado, en suma imprevisible, ya que tal suceso no acaece en esta región ni siquiera en forma irregular. En cambio, la inundación ocurrida en ciertas regiones de China es un acontecimiento frecuente y de ordinaria ocurrencia y, por lo tanto, previsible. En consecuencia, el hecho inopinado "inundación" es caso fortuito en Chile y no lo es en la China, y le da o no este carácter la forma como el suceso se presenta. . . .

La calificación de fortuito que un hecho reciba en determinadas circunstancias no es absoluta ya que, si éstas cambian, puede ocurrir que el mismo evento no tenga ya los requisitos suficientes como para aplicarle dicha calificación, y vice-versa. En efecto, 'puede ocurrir muy bien que un determinado género de accidentes pueda revestir en ciertas circunstancias el carácter de fortuito y en otras no, pero, es preciso que cambien las circunstancias de hecho. El incendio es caso fortuito, si depende de la caída de un globo aerostático encendido, si procede de la casa contigua o del fuego impulsado por el viento. No es fortuito si se debe a imprudencia en encender las luces o los combustibles; siendo así, es culpa, cualquiera que sea el tenor de la relación obligatoria'." (14)

Así, pues, puede concluirse que los fenómenos naturales no siempre eximen de responsabilidad a título de caso

---

(14) Coustasse e Iturra, obra citada, págs. 50–51.

fortuito o fuerza mayor pues para calificarlos de eximentes de responsabilidad, o de no eximentes, es necesario considerar las otras circunstancias que concurren en cada caso, como por ejemplo, el carácter frecuente o probable del fenómeno, o por el contrario su carácter inopinado o insólito; si se tomaron las medidas que aconseja la prudencia y la ciencia para evitar el daño o si no se tomaron, etc.

■ En el caso de autos las lluvias fuertes en ese lugar no son de por sí sucesos imprevisibles ni inopinados y los hechos demostraron que una vez que se tomaron las medidas necesarias—la construcción de los tragantes adicionales en la Calle 20—la situación se corrigió. No se cometió el segundo error señalado.

■ En cuanto al tercer error basta decir que si bien pudiera concluirse que el Municipio de Guaynabo es el responsable del debido funcionamiento del alcantarillado pluvial en la Urbanización Ponce de León una vez que dicho alcantarillado le fue entregado por los constructores, eso supone un alcantarillado bien construido y adecuado para la situación de aquel lugar. Como hemos visto, el alcantarillado original, antes de ser corregido, de la Calle 20 no era adecuado. En el juicio se mencionó que la inundación pudo haber sido causada por razón de que los tragantes entonces existentes pudieron haber estado tapados con basura y se le trató de imputar por eso culpa al Municipio. Lo que hay en el récord sobre eso son conjeturas pero no prueba. De los demás elementos, como dejamos expresado, sí hubo prueba no contradicha. Tampoco se cometió el tercer error señalado.

En el cuarto y último error se impugnan las cuantías concedidas por el Tribunal Superior. No creemos que las mismas sean improcedentes o exageradas. Posiblemente podrían variarse unos cientos de dólares para aumentarlas o rebajarlas pero no creemos que estamos justificados para intervenir con la apreciación que hizo el magistrado sentenciador.

En cuanto a la demandante Zenaida Soto Longo, quién

120

operaba un negocio de *nursery* con una matrícula de 30 niños, quién perdió equipo del negocio y un automóvil Corvair del año 1960; cuyo negocio tuvo que cerrar, quién pasó prueba y a quién, aunque la demanda fue declarada con lugar, el juez sentenciador por inadvertencia no le fijó compensación; y dado el caso que los hechos ocurrieron hace siete años y que el juez que entendió en el juicio ya renunció su cargo, para no contribuir a mayor dilación en este caso, y dado el caso que tenemos ante nos la transcripción de evidencia, le fijamos nosotros la compensación de mil dólares.

*Se confirmarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de San Juan, en 6 de septiembre de 1966, con la modificación antes dicha.*

El Juez Presidente Señor Negrón Fernández no intervino.