*1157 TEXTO COMPLETO DE LA SENTENCIA
La Constructora de las Américas, Inc. (la Constructora), recurre de una Resolución emitida por el Departamento de Asuntos del Consumidor (DACO) de 9 de agosto de 1996, notificada en esa misma fecha. Mediante dicha resolución se le ordenó a ésta y a Servicios y Obras del Caribe, Inc., (SYOCA) a reemplazar, de forma solidaria, los gabinetes de cocina y fregadero de la residencia de los querellantes-apelados, los esposos Eduardo Colón López y María Aponte Genera (los esposos Colón Aponte) o, en la alternativa, indemnizar a los querellantes con la suma de Siete Mil Ochocientos Dólares ($7,800), correspondientes al costo estimado de reemplazo de los gabinetes de cocina más el costo en el mercado de un fregadero nuevo de la misma marca, calidad y estilo al existente. Se dispuso, además, que la aseguradora United Surety & Indemnity Corp. respondería hasta el monto de la fianza.
I
El caso que nos ocupa tiene su origen en una querella presentada ante el DACO el 6 de febrero de 1996 por los esposos Colón Aponte por defectos de construcción en su residencia sita en el número 15 de la Calle B de la Urb. Parque de Bucaré II, en el Bo. Monacillos de San Juan.
Los defectos alegados fueron los siguientes:

"a) Bañera en el segundo nivel descascarada en varias áreas.

b) En la cocina, polilla en los gabinetes, gavetas descuadradas y otras que no abren con facilidad, tope manchado en la unión y fregadero manchado."

El matrimonio adquirió dicha propiedad de la querellada SYOCA, Inc. el 25 de febrero de 1994. La Constructora fue la empresa que construyó la edificación objeto de este litigio y United Surety & Indemnity Corp. expidió la fianza por la suma de Cinco Mil Dólares ($5,000).
Con antelación a la firma de las escrituras de compraventa y durante la inspección de la propiedad en noviembre de 1993, los querellantes señalaron los defectos del fregadero y el descuadre de las gavetas y las puertas del gabinete de cocina, los cuales fueron realizados por Cayey Kitchen Manufacturer, a un costo de Tres Mil Dólares ($3,000).
La Constructora contrató a Caribe Master Exterminating para efectuar un servicio de fumigación en los gabinetes de cocina, a través del procedimiento de "electro gum X-2000", cuyo tratamiento consiste de un golpe de electricidad a la madera que elimina la larva de la polilla por electrocución.
Transcurrido algún tiempo, volvió a notarse el polvo blanco en los gabinetes,
*1158 El 10 de marzo de 1995 un técnico de construcción del DACO realizó una inspección a la residencia de los esposos Colón Aponte que reflejó lo siguiente:
" — bañera del baño del pasillo en el segundo nivel en tres áreas desconchadas.

—gavetas y puertas de gabinetes de cocina desalineados.

—apareció polvo blanco en algunos lugares de los gabinetes.

—el fregadero instalado era marca Elkay aún cuando los planos indican que sería marca Dayton.

—manchas de óxido en el fregadero."

II
En su solicitud de revisión, la Constructora hace seis señalamientos de error, a saber:

"PRIMER ERROR: Erró DACO al negarse a resolver que la acción de los querellantes caducó aunque transcurrieron cerca de cuatro años desde la entrega de la vivienda al promotor hasta que se radicó la querella en DACO.

SEGUNDO ERROR: Erró DACO al resolver que la presencia de un insecto en los gabinetes de cocina son un defecto de construcción sin base en el Reglamento de DACO ni hacer la determinación correspondiente según requiere dicho Reglamento.

TERCER ERROR: Erró DACO al resolver que la madera de los gabinetes debió estar contaminada con cierto insecto entendiendo que el insecto no forma parte de la fauna de Puerto Rico contradiciéndose al determinar que el insecto habitaba en varias casas de la misma urbanización y no se sabe la fecha en que el insecto invadió los gabinetes.

CUARTO ERROR: Erró DACO al no resolver que la condición de los gabinetes era inevitable y que a tenor con el Art. 1058 del Cód. Civil no procede condenar a los querellados.

QUINTO ERROR: Erró DACO al resolver que era necesario reemplazar los gabinetes que están en uso sin haber determinación alguna de la condición de deterioro de éstos y la utilidad de los mismos.

SEXTO ERROR: Erró DACO al resolver que el valor de reemplazo de los gabinetes corresponde al estimado del inspector de DACO y al descartar el costo verdadero de los mismos."

En cuanto al primer error señalado, habremos de atenderlo haciendo referencia a las disposiciones de la Ley 130 de 13 de junio de 1967 (17 L.P.R.A., 501 t ss.); ley que tiene como propósito proteger a los compradores de viviendas de prácticas indeseables en el negocio de la construcción.
El Art. 7 del Reglamento que rige el negocio de la construcción establece que el urbanizador deberá prestar una fianza que se mantendrá vigente por el término de dos (2) años a partir de la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda o compradores subsiguientes que hayan adquirido dicha vivienda dentro de los dos años siguientes a la fecha del otorgamiento de la escritura de compraventa del comprador original. Por otro lado, el Art. 10 (j) del mismo reglamento enumera una serie de defectos de construcción y especifica el término en que deberá notificar al contratista o al *1159 urbanizador.
De hecho, en Maldonado Pérez v. Las Vega Dev. Co., 111 D.P.R. 573 (1981), el Tribunal Supremo señaló que de la totalidad del Art. 10 (j) y del Art. 7 se desprende que, en ausencia de disposición expresa en contrario, el término para la notificación al contratista comienza a contar a partir del otorgamiento de la escritura original.
En el caso que nos ocupa, la escritura mediante la cual los esposos Colón Aponte adquirieron la residencia se otorgó el 25 de febrero de 1994 ante el Notario Público Guillermo L. Arbona, hecho no controvertido. Habiéndose presentado la querella ante DACO el 6 de febrero de 1995, el término de dos años dispuesto por el Artículo 10 de la Ley Núm. 130 supra, no había transcurrido aún. Es más, los defectos se habían notificado a la Constructora mucho antes de la querella, conforme surge del expediente. Es incorrecto lo alegado por la Constructora en el sentido de que la acción había caducado por haber transcurrido cuatro años desde la entrega de la residencia. La fecha que se utiliza para computar el término de notificación al contratista es la de la escritura y no la fecha de entrega de la residencia. Ante esa situación fáctica no es preciso ampliar esta discusión por ser innecesaria para poder establecer que no se cometió el primer error señalado.
En el segundo error, la Constructora sostiene que erró al resolver que la presencia de un insecto en los gabinetes de cocina son un defecto de construcción sin base en el Reglamento de DACO ni hacer la determinación correspondiente.
Alega la Constructora que en ninguno de los defectos enumerados en el inciso 5 de la See. 10 (j) hace mención alguna a insectos. Es correcto que no se mencionan específicamente los insectos, pero el listado de defectos es numeras apertus.
Olvida la Constructora que más adelante, en el inciso 15 de la Sec. 10 (j), se provee para "cualquier otro defecto que no se encuentre aquí enumerado, pero que sea de construcción". Es en ese inciso donde se ubica la presencia de insectos en la madera utilizada en la construcción.
Alega la Constructora, además, que la definición dada por el Reglamento para "defecto de construcción" no incluye la presencia de la polilla. La propia definición no sostiene tal alegación ya que la misma incluye "cualquier anormalidad, defecto, falla, deterioro prematuro, mal funcionamiento, o cualquier otro vicio o condición que exceda la medida de las imperfecciones que caben esperar de una construcción". La polilla en la madera, obviamente, provoca el deterioro prematuro de los gabinetes y equivalen a vicio en el material utilizado para la construcción. Es innecesario discutir el hecho de que los gabinetes fueron construidos por otra compañía subcontratada a esos fines, pues es la Constructora la responsable de proveer los mismos en la residencia. No le asiste la razón a la parte apelada toda vez que no se cometió el error imputado.
Pasando al tercer error, debemos enfatizar que DACO concluyó, basado en la prueba recibida, que ese tipo de insecto no forma parte de la fauna de Puerto Rico, por lo que la madera debió estar contaminada previo a la fabricación de los gabinetes, (Determinación de Hechos Núm. 11 de la Resolución recurrida), hecho basado en el testimonio del Dr. Alberto Pantojas, el cual no fue refutado por la prueba desfilada por la Constructora en la vista.
Señalar que hay contradicción al indicar que el insecto no forma parte de la fauna de Puerto Rico y que el mismo habitaba en otras casas de la urbanización es un plateamiento simplista. No resulta difícil concluir que si los gabinetes de las demás casas de la urbanización fueron elaborados con la misma madera infectada por la polilla éstos estén, igualmente, infectados. No se cometió el tercer error señalado.
*1160 En el cuarto señalamiento de error, la Constructora alega que incidió DACO al no resolver que la condición de los gabinetes era inevitable y que, por lo tanto, no procedía condenarlos, a tenor con el Art. 1058 del Código Civil.
DACO fundamenta su determinación de que la Constructora fue negligente al ésta no cerciorarse que los materiales utilizados en la construcción de los gabinetes de cocina estuvieran libres de desperfectos, incluyendo que estuvieran libre de la polilla. De haber utilizado madera tratada para los gabinetes, la polilla no hubiese estado en los gabinetes.
En Rivera v. Caribbean Home Const. Corp, 100 D.P.R. 106, (1971), se fijan unos parámetros para determinar si una situación constituye un caso inevitable. Es necesario considerar las circunstancias que concurren en cada caso como, por el ejemplo, el carácter frecuente o probable del fenómeno o, por el contrario, su carácter inopinado o insólito y si se tomaron las medidas que aconseja la prudencia y la ciencia para evitar el daño, o si éstas no se tomaron. En el caso de autos no surge que tales medidas se hayan tomado.
No se cometió el cuarto error señalado.
Los señalamientos de error quinto y sexto versan sobre el reemplazo de los gabinetes, por lo que los atenderemos en conjunto.
En el quinto error la Constructora alega que era necesario hacer determinaciones en cuanto a la condición de deterioro de los gabinetes para poder resolver que era necesario reemplazarlos. Entendemos que efectivamente las Determinaciones de Hechos Número 6, 7, 8 y 9 atienden ese reclamo. No se cometió el quinto error señalado.
El sexto error cubre el aspecto de costo de reemplazo de los gabinetes.
Argumenta la Construtora que el costo verdadero de los gabinetes es de Tres Mil Trescientos Dólares ($3,300) y por ser el efecto de nuestro derecho reparador, lo que se pretende es reponer al perjudicado en igual condición en que estaban antes de ocurrir el daño. Alega que DACO no justifica porqué aceptó el valor estimado por su técnico y descartó el costo verdadero.
No podemos perder de vista que la orden emitida por DACO, taxativamente dispone:

"En el término de veinte (20) días a partir de la notificación de la presente Resolución, las querelladas SYOCA, Inc. y Constructora de las Américas solidariamente vendrán obligadas a reemplazar los gabinetes de cocina y el fregadero.

Transcurrido el término anterior sin que las querelladas cumplan con lo antes indicado, vendrán obligadas a indemnizar a los querellantes con la suma de $7,800 que corresponde al costo estimado de reemplazo de los gabinetes de cocina, más costo en el mercado del fregadero nuevo de la misma marca, calidad y estilo al existente."

Vemos que la orden es de reemplazar los gabinetes en veinte (20) días. Si así lo hacían, no era necesario que entraran a discutir el aspecto del costo. No obstante, hay que reconocer que desde la fecha en que se instalaron originalmente los gabinetes hasta el presente han transcurrido más de seis años y es lógico que el costo haya aumentado. Otro aspecto a considerar es el hecho que, al momento de equipar todas las residencias de la urbanización, los gabinetes se compraron a un precio al por mayor. Obviamente, el precio en aquel momento debió ser menor que el valor en el mercado para una sola unidad.
DACO tiene el conocimiento especializado en este tipo de querella, al cual debemos *1161 deferencia. Dicho organismo cuenta con una vasta experiencia y conocimiento ("expertise") en relación con la materia con la que brega día tras día. M. & V. Orthodontics v. Negdo. Seg. de Empleo, 115 D.P.R. 183 (19894). Los tribunales no deben intervenir en los quehaceres de las agencias administrativas más allá de lo que sea realmente necesario. Agosto Serrano v. Fondo del Seguro del Estado, 133 D.P.R. _, 93 J.T.S. 37, pág. 10510. No se cometió el error señalado.
Por los fundamentos antes expresados, se confirma la Resolución emitida por el DACO el 9 de agosto de 1996.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA78
1. Escritura Número Cuatro (4) otorgada ante el Ledo. Guillermo L. Arbona el 25 de febrero de 1994.
2. "Determinación de Hechos Número 6:

Para noviembre de 1993, previo a la radicación de la querella y durante la inspección efectuada a la propiedad antes de firmar las escrituras de compraventa, el querellante reclamó a los querellados los defectos del fregadero y el descuadre de gavetas y puertas del gabinete de cocina.

Determinación de Hechos Número 7:

La querellada Constructora Las Américas contrató a Caribe Master Exterminating, (Carr. 845, Esq. Platero B-l Villas Cupey), para efectuar un servicio de fumigación a los gabinetes de la cocina, a través del proceso de "electro gum X-2000".

Determinación de Hechos Número 8:

Aplicado este tratamiento, los querellantes no observaron el polvo blanco por un período de tiempo. Transcurrido el cual, volvieron a notar el polvo blanco.

Determinación de Hechos Número 9:

El 10 de marzo de 1995, Carlos Ayala, Técnico de Construcción del DACO, realizó una inspección de propiedad objeto de la querella de epígrafe. De dicha inspección surge lo siguiente:

—se apreció un polvo blanco en algunos lugares de los gabinetes."