# 2003 DTA 97

OCT 0 8 2003

ALS DEPT.
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL V DE PONCE Y AIBONITO

PEDRO J. POLANCO HERNANDEZ, OLGA HERNANDEZ SANTIAGO
Recurridos

v.

BRISAS DEL LAUREL, INC.
Recurrente

Núm. KLRA-03-00179

San Juan, Puerto Rico, a 6 de junio de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

*Per Curiam*

### TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Brisas del Laurel, Inc, en adelante, la recurrente, solicitando la revisión de una Resolución emitida por el Departamento de Asuntos del Consumidor, en adelante, el D.A.C.O. Mediante dicho dictamen, el D.A.C.O. ordenó a la recurrente devolver la suma de $1,500 a Pedro J. Polanco Hernández y Olga Hernández Santiago, en adelante, los recurridos, por concepto de un depósito en un contrato de opción de compra.

Por las razones que esbozamos a continuación, se expide el auto solicitado y se revoca la Resolución recurrida.

### I

Conforme surge del recurso ante nuestra consideración, el 18 de junio de 2002, los recurridos incoaron querella ante el D.A.C.O. En la misma, solicitaron la devolución del depósito dado cuando opcionaron una residencia en el Proyecto Brisas de Laurel. Expresa la querella, en lo pertinente:

*"Alega y expone la querellante que opcionó para la compra de una residencia....Que al momento de la transacción se le informó que de cancelar el contrato se le iba a retener solamente la suma de $50.00. La transacción estaba sujeta a financiamiento...Que debido a causas ajenas, la parte querellante [los recurridos] no está en la capacidad económica de cualificar y comprar la casa...".*

Véase Exhibit II del Apéndice.

El 4 de febrero de 2003 se celebró la vista administrativa. La recurrente no compareció a la misma, a pesar de haber sido debidamente citada. En su consecuencia, se le anotó la rebeldía a dicha parte.

De las determinaciones de hechos del D.A.C.O., las cuales transcribimos *in extenso* surge:

*"El pasado 9 de octubre de 1999, los Querellantes [recurridos] opcionan vivienda en el proyecto Brisas del Laurel localizado en el pueblo de Ponce. El precio alzado tentativo de venta fue de $99,600 dólares más unos $2,500 dólares en gastos de cierre.*

*El 19 de marzo de 2001, los Querellantes [recurridos] firmaron contrato de compraventa donde se indica que el precio de compraventa es $100,600 más $8,160 dólares en gastos de cierre.*

*El contrato de compraventa indica que cuando ocurre caso fortuito o fuerza mayor fuera imposible celebrar el negocio, la firma vendedora devolverá el depósito dado en su totalidad. (Véase la cláusula 17 inciso f y la cláusula 19 del contrato uniforme de compraventa).*

*Asimismo, el contrato de compraventa indica que la firma llamará a los compradores dentro del término de dieciocho meses para la otrogación [sic] de la escritura de compraventa o el comprador podría resolver el contrato, debiendo los compradores gestionar el financiamiento.*

*Pasados dieciséis meses de la otorgación del contrato de compraventa, le informan a la Firma Querellada [recurrente] que debido a que la Querellante Olga Hernández se·había quedado sin trabajo, pues se había visto obligada a dejar de vender la línea de productos Saladmaster que vendía debido a una disminución significativa en las ventas motivado por la recesión económica, el ingreso mensual había disminuido de $2,000 dólares a $1,200.00 dólares mensuales.*

*La firma no había llamado a los Querellantes [recurridos] para la otorgación de la escritura de compraventa cuando el pasado 14 de junio de 2002 debido a la drástica reducción en ingresos familiares informan a la Querellada Monte Real Development [recurrente] que no podrán otorgar la escritura de compraventa.*

*Los Querellantes [recurridos], entendiendo que se trata de un caso fortuito o de fuerza mayor, solicitan la devolución de los $1,500 dólares depositados al momento de firmar el contrato de compraventa.*

*La firma Querellada [recurrente] se niega a devolver el dinero por entender que la resolución del contrato fue ocasionado por el comprador, teniendo derecho a retener el depósito conforme a lo dispuesto en la cláusula 19 del contrato de compraventa de marzo de 2001."*

Véase Exhibit V del Apéndice.

Mediante Resolución emitida el 5 de febrero de 2003, notificada en igual fecha, el D.A.C.O. ordenó al recurrente devolver el depósito en controversia. Descansó su determinación en el Art. 12 del Reglamento para Regular el Negocio de la Construcción y Adquisición de Viviendas Privadas en Puerto Rico. Entendió el D.A.C.O. que la alegación de pérdida de empleo y de ingresos era una causa de fuerza mayor que permitía la resolución del contrato suscrito entre las partes.

Inconforme con dicho dictamen, la recurrente presentó reconsideración, la cual fue acogida. Mediante Resolución en Reconsideración, emitida el 25 de febrero de 2003, notificada en igual fecha, el D.A.C.O. emitió su dictamen. El mismo modificó el emitido originalmente a fin de disminuir la cantidad de $50 de la cantidad que la recurrente debía devolver a los recurridos, a tenor con la Cláusula 19 del Contrato.

Sobre el planteamiento relativo a que la pérdida de empleo y de ingresos era una causa de fuerza mayor, el D.A.C.O. se reiteró su decisión. En adición, determinó el D.A.C.O., como fundamento adicional para resolver el contrato, que advenida en conocimiento la institución financiera de las condiciones de los recurridos, dicha institución hubiera denegado el financiamiento del préstamo o aprobado el mismo por una suma inferior a la solicitada.

En particular, indica el D.A.C.O.:

*"Es un hecho que los bancos aprueban las solicitudes de préstamo a base de los ingresos de los solicitantes. Los Querellantes probaron que sus ingresos disminuyeron en un 40%, por lo que es razonable pensar que la institución hubiera denegado el préstamo solicitado o lo hubiera aprobado por una suma inferior. (Los Querellantes habían precualificado para el financiamiento con un ingreso de $2,000 mensuales que disminuyó a $1,200 dólares.)*

*En estas circunstancias, un hombre prudente y razonable sabe que los Querellantes no tienen los ingresos*

*suficientes para comprar la residencia motivo del caso y no era necesario que el banco tramitara el préstamo para saber que el financiamiento no sería aprobado o sería aprobado por una suma inferior a la solicitada.*

*...".*

Véase Exhibit VII del Apéndice.

Insatisfecha con la determinación de la agencia, recurre ante nos la recurrente mediante recurso de revisión. El 3 de abril de 2003, le ordenamos a la parte recurrida mostrara causa por la cual no debíamos expedir el auto solicitado. Habiendo dicha parte cumplido con nuestra Orden, procedemos conforme intimado.

## II

En su escrito, la recurrente plantea que incidió el D.A.C.O. al resolver que un optante -bajo el contrato vigente- puede decidir unilateralmente que la institución bancaria le va a negar el préstamo y no acudir a ninguna institución y aún así recibir la devolución del depósito de opción; y al determinar sin citar autoridad legal alguna, que perder el empleo es automáticamente caso fortuito o fuerza mayor que exonera de cumplir con el contrato al querellante-recurrido y obliga al querellado-recurrente a devolver el depósito.

## III

Las conclusiones e interpretaciones de los organismos y agencias administrativas especializadas merecen gran consideración y respeto de los tribunales. *M&V Orthodontics v. Negociado de Seguridad de Empleo*, 115 D.P.R. 183, 188 (1984). La revisión judicial debe limitarse a determinar si actuaron arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción. *Franco v. Dpto. de Educación*, 148 D. P.R. 703 (1998).

La intervención judicial en estos casos, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, 3 L.P.R.A. sec. 2175; *P.R.T.C. v. R. Reg. Tel. de P. R.*, 151 D.P.R. ___ (2000), **2000 J.T.S. 98**; *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997).

La norma reiterada es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. ___ (2000), **2000 J.T.S. 21**; *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387 (1999); *T. JAC, Inc. v. Caguas Centrum Limited*, 148 D.P.R. 70 (1999).

La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra.*

En consecuencia, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Ind. P.R. v. J.P. y A.A.A., supra; Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1997). Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones

de la agencia, sin sustituir el criterio del tribunal por el de la agencia administrativa. *Misión Ind. P.R. v. J.P. y A. A.A., supra; Metropolitana, S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995).

Sin embargo, la deferencia judicial cede cuando el foro administrativo ha errado al aplicar la ley. *Castillo v. Depto del Trabajo*, 151 D.P.R. ___ (2000), **2000 J.T.S. 154**; *Reyes Salcedo v. Policía de P.R., supra.*

**IV**

En el caso de autos, el Contrato Uniforme de Compraventa ▮ suscrito entre las partes dispone, en lo pertinente:

*"17. Mediante debida notificación a la VENDEDORA, el COMPRADOR podrá resolver este contrato en cualesquiera de los siguientes casos:*

*a) ...*

*e) Si se le notificara por el urbanizador y/o constructor, o por cualquier otra persona autorizada, que la firma o institución mediante la cual se tramitó su solicitud de préstamo hipotecario denegó la concesión del mismo o lo aprobó por una cantidad menor a la solicitada en el préstamo.*

*f) Si por fuerza mayor o caso fortuito no fuese posible cumplir con los términos de este contrato.*

*18. Mediante debida notificación al COMPRADOR, la VENDEDORA podrá resolver este contrato en cualquiera de los siguientes casos:*

*a)...*

*d) Si por fuerza mayor o caso fortuito no fuese posible cumplir con los términos de este contrato."*

En nuestra jurisdicción se reconoce el principio de autonomía contractual entre los contratantes, quienes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral y el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A., sec. 3372. Las obligaciones que nacen de los contratos tienen fuerza de ley entre los contratantes y deben cumplirse al tenor de los mismos. Art. 1044 del Código Civil, 31 L.P.R.A., sec. 2994; *Mercado Rivera v. Universidad Católica*, 143 D.P.R. 610 (1997).

Perfeccionado un contrato, mediando el consentimiento de las partes, éstas se obligan desde ese momento al cumplimiento de lo expresamente pactado, así como a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A., sec. 3375.

La obligación de cumplir con lo pactado se funda en el principio de la buena fe, el cual exige no defraudar la confianza que otro ha puesto en una promesa o conducta. *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 850 (1991), (citando a L. Díez-Picazo, *Fundamentos de Derecho Civil Patrimonial*, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, Cap. IV, pág. 99).

En el caso de autos, el contrato suscrito es meridianamente claro al disponer que el comprador podrá resolver el mismo cuando, entre otros extremos, se le notifique por el urbanizador y/o constructor, o por cualquier otra persona autorizada, que la firma o institución mediante la cual se tramitó su solicitud de préstamo hipotecario denegó la concesión del mismo o lo aprobó por una cantidad menor a la solicitada en el préstamo.

Por otro lado, y como bien señala la recurrente, no está en controversia que los recurridos no acudieron a

ninguna institución bancaria ni se les negó el crédito. Lo anterior se desprende tanto de la querella como de las determinaciones de hechos del D.A.C.O. En su consecuencia, no aplica lo dispuesto en la Cláusula 17(e).

Nos plantea la recurrente como segundo error que la pérdida de empleo no está comprendido en la definición de caso fortuito o fuerza mayor.

Con relación a las obligaciones y a sucesos imprevistos o inevitables, el Art. 1058 de Código Civil, 31 L.P. R.A. sec. 3022, dispone que *"nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables."* El Tribunal Supremo de Puerto Rico, al analizar este precepto, ha utilizado los conceptos de fuerza mayor o caso fortuito. *O.E.G., D.A.Co. v. Rivera, Cintrón*, 153 D.P.R. ___ (2001), **2001 J. T.S. 6**. Ha señalado dicho Foro:

*"Con relación a su contraparte, el Art. 1105 del Código Civil Español, se ha expresado que éste 'trata, sin nombrarlo, del caso fortuito' y que 'el término que más frecuentemente es utilizado en relación a él, es el de fuerza mayor... El Art. 1105 recoge su definición tradicional como acontecimiento perjudicial y que excede absolutamente el concepto de diligencia.' En cuanto a fuerza mayor se ha dicho que es el acontecimiento, que por su propia naturaleza excede a priori del concepto de diligencia; así que basta enunciarlo para saber que ante él toda diligencia hubiera sido irrelevante." Comentario del Código Civil*, Tomo II, *Ministerio de Justicia*, Badosa Coll, pág. 43, Madrid (1991).

En *Rivera v. Caribbean Home Const. Corp.*, 100 D.P.R. 106, 110 (1971), al hacer referencia al Art. 1058 expresamos que *"ese suceso eximente de responsabilidad por razón de que no puede preverse o que previsto no puede evitarse, se llama caso fortuito o fuerza mayor. **Este concepto amplio, que por estar basado en la equidad puede operar en todo campo de derecho, tiene como su aplicación más importante la de eximir de responsabilidad en el cumplimiento de las obligaciones.**"* (Enfasis suplido.) Como podrá observarse, este concepto de equidad aplicable a las obligaciones lo hemos interpretado de forma amplia, haciéndolo extensivo a todo campo de derecho. Hoy estamos aplicando este sabio principio de equidad que permea todo nuestro ordenamiento a las normas procesales que, después de todo, tienen como único propósito el viabilizar la consecución de los derechos sustantivos. (Enfasis suplido.) *O.E.G., D.A.C.O. v. Rivera, Cintrón, supra.*

De lo anterior, colegimos que ha de tratarse, por tanto, de un hecho no imputable al deudor, imprevisto o en todo caso inevitable. Ha expresado Puig Brutau que: *"[e]stas afirmaciones generales, sin embargo, sólo pueden valer como fórmula provisional y no excusan de tener que juzgar cada caso según el criterio que imponga la naturaleza de la obligación y las circunstancias concurrentes"*. Puig Brutau, J., *Fundamentos de Derecho Civil*, Tomo I, Vol. II, 3ra. ed., Bosch, Barcelona, 1989, a la pág. 435.

Como sabemos, la fuerza mayor es el acontecimiento que no hemos podido precaver ni resistir, como por ejemplo, la caída de un rayo, el granizo, la inundación, el huracán, la irrupción de enemigos, el acometimiento de ladrones... y es caso fortuito el suceso inesperado o la fuerza mayor que no se puede precaver ni resistir... Tales como inundaciones, torrentes, naufragios, incendios, rayos, violencias, ruinas de edificios causadas por alguna desgracia imprevista y otros acontecimientos semejantes. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854 (1978). Para que el caso fortuito o fuerza mayor exima de responsabilidad es necesario que se cumplan los siguientes requisitos:

*"(1) Que el hecho que produce el daño no dependa de la voluntad del demandado ni sea imputable a éste por haberse originado en un accidente fatum fatalitas.*

*(2) Que el hecho sea imprevisto e inevitable, es decir, fuera de la diligencia razonable y habitual del demandado.*

*(3) Que el incumplimiento del demandado con su deber de cuidado se deba a imposibilidad y no a mera dificultad."*

*P.R. & American Ins. Co. v. Durán Manzanal*, 92 D.P.R. 289, 293 (1965).

En el caso de autos, el D.A.C.O., en su comparecencia ante nos,. plantea que la pérdida de empleo conforma una situación de fuerza mayor. Arguye que dicha situación era una que no se podía prever, o si prevista, era una inevitable.

Aplicando los criterios arriba esbozados tenemos que concluir que la pérdida de empleo no es un suceso que fuére una fuerza mayor. Lo mismo es un evento anticipable, que podía ocurrir. Comparece *Rivera v. Caribbean Home Const. Corp., supra.* Véase también, *Manes Horta v. Const. Inc.,* 111 D.P.R. 589, 591 (1981). En consecuencia, tampoco procedía resolver el contrato al amparo de lo dispuesto en la Cláusula 17(f).

Ante la situación planteada, incidió la agencia al ordenar la devolución del depósito en controversia.

## V

Por las razones arriba esbozadas, se expide el auto solicitado y se revoca la Resolución recurrida. En su consecuencia, se desestima la querella incoada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 97**

**1.** Como bien plantea la recurrente, dicho contrato fue pre-aprobado por D.A.C.O.