ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **BANCO POPULAR DE PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**EMMA MARIE LOZADA RAMÍREZ y OTROS**<br><br>Apelante | KLAN202400069 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala de **Humacao**<br><br>Civil Núm.: **HU2022CV00669**<br><br>Sobre: Cobro de Dinero – Ordinario y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de mayo de 2024.

Comparece ante nos la Sra. Emma Marie Lozada Ramírez (en adelante, señora Lozada Ramírez) por derecho propio y en representación del Sr. Richard Hernando Castro Báez (en adelante, señor Castro Báez) (en conjunto, parte apelante), a través de un recurso de *Apelación Civil,* y solicitan que revoquemos una *Sentencia* emitida el 1 de diciembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI), notificada y archivada en autos el 4 de diciembre de 2023.[2] Mediante dicho dictamen, el foro primario declaró con lugar la *Demanda* del caso de marras.[3] Consecuentemente, ordenó a la parte apelante a pagar la deuda que a la fecha de la radicación de la *Demanda* ascendía a $227,277.03 de principal, más los intereses al 6.25% acumulados desde el 1 de enero de 2018; los cargos por mora; una cantidad equivalente al

---

[1] Mediante la Orden Administrativa OATA-2024-021 de 2 de febrero de 2024, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Eric R. Ronda Del Toro.
[2] Apéndice de la *Apelación,* Anejo 1, págs. 1-17.
[3] *Íd.,* Anejo 5, págs. 34-70.

10.00% del principal del pagaré para el pago de las costas, los gastos y los honorarios de abogados; y cualesquiera otros adelantos que se hagan en virtud del pagaré y la escritura de hipoteca, según pactado, hasta un total saldo de la obligación.

Por los fundamentos que expondremos a continuación, resolvemos *confirmar* la *Sentencia* recurrida.

**I.**

La presente controversia tiene su génesis el 16 de mayo de 2022 cuando el Banco Popular de Puerto Rico (en adelante, BPPR) presentó una *Demanda* en contra de la parte apelante en cobro de dinero y ejecución de hipoteca. Arguyó el BPPR que la señora Lozada Ramírez es titular registral de una unidad del condominio Palmarina Club de Palmas del Mar en Humacao, Puerto Rico. Sostuvo que el 30 de diciembre de 2002, el BPPR concedió a la parte apelante un préstamo por la suma de $306,000.00 con intereses al 6.25%, y vencedero el 1 de diciembre de 2032, y demás créditos accesorios. El BPPR alegó también que el préstamo quedó evidenciado por medio de un pagaré hipotecario pagadero a R-G Premier Bank of Puerto Rico, o a su orden, por la suma antes mencionada, y el cual se encuentra ahora en su posesión. Sostuvo el BPPR además que el pagaré hipotecario quedó garantizado por hipoteca en virtud de la Escritura Número 720 otorgada en San Juan, Puerto Rico, el 30 de diciembre de 2002. Arguyó además el BPPR que dicha hipoteca garantiza el pago de principal del pagaré hipotecario y sus intereses, así como una suma líquida y exigible de 10.00% del principal del pagaré hipotecario para gastos, costas y honorarios de abogados en caso de que se presente una reclamación judicial. El BPPR también alegó que la parte apelante incumplió con su obligación de hacer pagos bajo el préstamo antes descrito y a la fecha de la radicación de la *Demanda* a la parte apelante le adeudaba la suma de $227,277.03, los intereses acumulados desde el 1 de enero de 2018,

los cuales irían en aumento hasta el saldo total de la deuda, cargos por mora, y cualesquiera otros adelantos que se realicen en virtud del pagaré y la escritura de hipoteca. Por último, solicitó que el foro primario:

> (a) [C]ondene a la parte demandada a pagar al **BPPR** solidariamente las sumas reclamadas en la demanda;

> (b) [O]rdene la ejecución de la finca mediante su venta en pública subasta para satisfacer, hasta donde alcance el producto de dicha venta, el balance de la deuda.

> (c) Disponiendo que, una vez celebrada la subasta y adjudicada la propiedad al mejor postor, el señor Alguacil haga entrega material de dichas propiedades subastadas al adjudicatario, teniendo a tal fin la Sentencia el efecto de un auto posesorio, y en los casos que fuere necesario, procediendo al lanzamiento de los ocupantes de la propiedad subastada;

> (d) Disponiendo que, del producto de la venta judicial, se proceda a satisfacer al **BPPR** la totalidad de la Sentencia, incluyendo sin limitación, la suma pactada para costas y honorarios de abogado, más los gastos de la venta judicial y si hubiere algún remanente y no hubiere gravámenes posteriores, disponiendo que el mismo le corresponde a la parte demandada, el cual le sería entregado mediante posterior orden del Tribunal;

> (e) Disponiendo que en caso de que el producto de la venta no fuere suficiente para satisfacer la totalidad de la Sentencia dictada y los gastos de la venta judicial, se expida Orden y Mandamiento de Embargos y Ejecución proveyendo para la venta y ejecución de cualesquiera otros bienes muebles o inmuebles de la parte demandada, hasta dejar pagada cualquier deficiencia o parte insoluta de la Sentencia y de los gastos de ambas ventas judiciales;

> (f) Disponiendo que una vez vendida y adjudicadas las propiedades inmuebles en las subastas y previo los trámites de Ley correspondientes, se cancele el Pagaré Hipotecario objeto de esta Demanda;

> (g) Ordenando además en la Sentencia, para que, por el Registrador correspondiente, se proceda a la cancelación de gravámenes posteriores a la hipoteca de la parte demandante, que surjan en el Registro.[4] (Énfasis en el original).

---

[4] *Íd.*, págs. 38-39.

El 1 de agosto de 2022, la señora Lozada Ramírez presentó una *Contestación a Demanda* en la que aceptó que era la titular del apartamento número 21 del condominio Palmarina Club en Humacao.[5] Esta arguyó que, aunque el señor Castro Báez no tenía nada que ver con la deuda ni con el apartamento perteneciente a ella, este firmó como co-deudor el aludido pagaré hipotecario. También negó que el BPPR le hubiese concedido un préstamo, pero admitió que firmó un pagaré a favor de R-G Premier Bank of Puerto Rico por la cantidad de $306,000.00. Alegó además que no pudo pagar las mensualidades de la hipoteca a partir del paso del Huracán María y la pandemia del COVID-19 por los daños sufridos por el inmueble y el impacto severo que tuvo en la compareciente durante los meses que estuvo sin poder trabajar y la merma sustancial que esto significó para sus ingresos. Añadió que, a tenor con la doctrina de *rebuc sic stantibus*, ocurrió un cambio imprevisto en las circunstancias que ocasionó serios daños al apartamento, convirtiéndolo en una propiedad inhabitable y afectando sustancialmente su valor. Por último, arguyó que se vio impedida de cumplir con los pagos, por lo que, conforme a la aludida norma, procede que las condiciones pactadas en el contrato original sean revisadas y atemperadas a la realidad.

El mismo 1 de agosto de 2022, el señor Castro Báez presentó una *Contestación a Demanda*[6] donde realizó, en esencia, las mismas alegaciones que hizo la señora Lozada Ramírez en su *Contestación a Demanda*.

El 30 de noviembre de 2022, el BPPR presentó una *Oposición a Solicitud de Aplicabilidad de [la] Doctrina de Rebus Sic Stantibus a la Onerosidad Causada por la Circunstancias Económicas Imprevisibles y Extraordinarias Resultantes de la Pandemia Viral del*

---

[5] *Íd.*, Anejo 6, págs. 71-77.
[6] *Íd.*, Anejo 7, págs. 78-82.

*COVID-19*[7] por la cual solicitó del foro *a quo* que denegara la defensa de *rebus sic stantibus* por tres (3) razones primordiales: dicha doctrina no aplica a contratos de tracto único como los contratos de préstamo; la solicitud de la parte apelante es superflua considerando que existe un proceso de mitigación de pérdidas por medio del cual el BPPR podría evaluar alternativas para modificar su préstamo; y la aplicación de la aludida doctrina está en conflicto con la regulación federal que ocupa el campo.

Luego de varios trámites procesales, el 29 de abril de 2023, el BPPR presentó una *Moción Informativa y en Solicitud de que se Resuelva Solicitud y Oposición a Solicitud de Aplicabilidad de [la] Doctrina de Rebus Sic Stantibus a la Onerosidad Causada por la Circunstancias Económicas Imprevisibles y Extraordinarias Resultantes del Hu[r]acán la Pandemia Viral COVID-19.*[8] Por medio de esta, el BPPR reiteró que la doctrina de *rebus sic stantibus* constituye un remedio excepcional para situaciones extraordinarias que requiere un prudente y escrupuloso discernimiento judicial de moderación. Además, detalló los siete (7) requisitos necesarios para que aplique la aludida doctrina, a tenor con *Casera Foods, Inc. v. ELA*, 108 DPR 850 (1979), y que nuestro Máximo Foro ha resuelto que el incumplimiento con uno de estos es suficiente para que no proceda la revisión del convenio conforme a la doctrina *rebus sic stantibus*. Alegó el BPPR que no se cumple con el requisito de imprevisibilidad respecto a la crisis económica. Sostuvo, en parte que el paso de los huracanes en Puerto Rico es un evento previsible en un país susceptible al paso de huracanes, y que, por ello, el paso de huracanes y eventos pandémicos no pueden ser considerados como situaciones extraordinarias, imprevistas o casos fortuitos. Por último, arguyó el BPPR que la hipoteca fue garantizada con la

---

[7] *Íd.*, Anejo 10, págs. 88-95.
[8] *Íd.*, Anejo 13, págs. 99-104.

propiedad de la parte apelante por la previsibilidad del riesgo de incumplir con la obligación de pago.

El 1 de mayo de 2023, la parte apelante presentó una *Moción Informativa y en Solicitud de Término para Replicar Escrito y Contestar las Objeciones de la Parte Demandante a las Contestaciones a Interrogatorio de la Parte Demandada.*[9] En lo específico, solicitó del foro primario un término de veinte (20) días para responder a las alegaciones realizadas por el BPPR respecto a la no aplicabilidad de la doctrina de *rebus sic stantibus.*

El 22 de mayo de 2023, el BPPR presentó una *Moción Reiterando Solicitud de que se Resuelva Solicitud y Oposición a Solicitud de Aplicabilidad de [la] Doctrina de Rebus Sic Stantibus a la Onerosidad Causada por la Circunstancias Económicas Imprevisibles y Extraordinarias Resultantes del Hu[r]acán María y de la Pandemia Viral del COVID-19.*[10] Sostuvo el BPPR, en lo pertinente, que había transcurrido el término de veinte (20) días para que se expresara, sin que cumpliera con ello. Por último, solicitó que resolviera su solicitud de sentencia sumaria y correspondiente oposición.

El 23 de mayo de 2023, la parte apelante presentó una *Moción en Cumplimiento de Orden, en Solicitud de que se Aplique la Teoría de Derecho Rebus Sic Stantibus y en Solicitud de que se Paute Vista Evidenciaria sobre la Aplicación de la Referida Teoría.*[11] Por medio de esta, la parte apelante solicitó del foro *a quo* que pautara una vista evidenciaria para determinar la aplicación de la doctrina de *rebus sic stantibus*. También discutió cada uno de los requisitos de dicha doctrina aplicado al caso de marras. La parte apelante sostuvo que, en torno al primer requisito, la circunstancia imprevisible fue un fenómeno de la naturaleza y que, por ello, el cumplimiento con los

---

[9] *Íd.*, Anejo 12, págs. 97-98.
[10] Apéndice del *Alegato de la Parte Apelada en Relación con el Recurso de Apelación*, Anejo 8, págs. 89-90.
[11] Apéndice de la *Apelación*, Anejo 14, págs. 105-113.

pagos se tornó oneroso. Arguyó además que existía un elemento de riesgo determinante, siendo este que el inmueble tenía condiciones de deterioro estructural y su estructura eléctrica se encontraba seriamente comprometida. Alegó además que el cambio en las circunstancias no era atribuible a ninguna de las partes. Continuó alegando que el contrato de hipoteca cumplía con otro requisito, siendo este que el contrato era de tracto sucesivo, y que las circunstancias que impedían el cumplimiento con el contrato surgieron quince (15) años después de haber celebrado el contrato de hipoteca y los daños severos sufridos por el inmueble, lo cual lo tornó inservible e inhabitable.

El mismo 23 de mayo de 2023, el TPI emitió una *Resolución*, notificada y archivada el 24 de mayo de 2023,[12] en la que denegó la solicitud de paralización de los procedimientos presentada por la parte apelante, a tenor con la doctrina de *rebus sic stantibus* y ordenó la continuación de los procedimientos.

El 13 de junio de 2023, el BPPR presentó una *Moción Solicitando se Dicte Sentencia Sumaria*[13] por la cual arguyó que, ante el incumplimiento de la parte apelante con sus obligaciones con el BPPR, y no existiendo controversia real de hechos materiales en el caso de epígrafe, procedía que el TPI declarara con lugar su solicitud de sentencia sumaria y condenara a la parte apelante al pago de las sumas reclamadas en la *Demanda*. También solicitó que ordenara en defecto de pago la ejecución de hipoteca y la venta en pública subasta del inmueble en cuestión.

Posteriormente, el 26 de julio de 2023, la parte apelante presentó una *Moción en Cumplimiento de Orden, en Solicitud de Desestimación y Vehemente Oposición a la Solicitud de Sentencia de la Parte Demandante y en Reiterada Solicitud de Vista Argumentativa*

---

[12] *Íd.*, Anejo 15, pág. 114.
[13] *Íd.*, Anejo 16, págs. 115-129.

*y/o Evidenciaria.*[14] Por medio de esta, sostuvo que el foro primario tenía la responsabilidad y obligación de evaluar la aplicación de la doctrina *rebus sic stantibus,* por lo cual resultaba imposible que el TPI dictara la sentencia sumaria a favor del BPPR. Además, reiteró su planteamiento sobre la aplicación de la aludida doctrina y sostuvo que la misma es obligatoria.

Luego de varios trámites procesales, el 21 de noviembre de 2023, el BPPR presentó una *Moción en Solicitud de Remedio*[15] donde expresó que el TPI no se había expresado respecto a la solicitud de sentencia sumaria. Reiteró que, aun tomando en consideración la posición de la parte apelante, no existía controversia de hecho o derecho con relación a la reclamación de autos.

El 1 de diciembre de 2023, el foro primario emitió una *Sentencia,*[16] notificada y archivada en autos el 4 de diciembre de 2023, por la que declaró con lugar la *Demanda.* Fundamentó dicho dictamen en que en el caso de autos no es de aplicación la cláusula de *rebus sic stantibus* porque no se cumplieron a cabalidad los requisitos expuestos por nuestro más alto foro en *Casera Foods, Inc. v. ELA, supra*; a saber, la imprevisibilidad y un contrato de tracto sucesivo. Respecto al carácter de imprevisibilidad, sostuvo que el paso de un evento atmosférico como un huracán y la posibilidad de que la propiedad sufriera daños a consecuencia de dicho evento era previsible. Por otro lado, determinó que tampoco era aplicable la aludida doctrina ya que el contrato de préstamo no es de tracto sucesivo, sino de tracto único. Por último, el TPI determinó que no existía controversia sobre la existencia de una obligación válida entre las partes, y que la parte apelante no alegó ni probó defensa o reclamación por resarcimiento de clase alguna, que las excusara del

---

[14] *Íd.*, Anejo 19, págs. 132-193.
[15] *Íd.*, Anejo 20, págs. 194-195.
[16] *Íd.*, Anejo 1, págs. 1-17.

pago de la deuda, por lo cual no existía controversia en que la parte apelante incumplió con el pago mensual según pactado desde el 1 de enero de 2018 al presente. Consecuentemente, ordenó a la parte apelante a pagar la deuda que a la fecha de la radicación de la *Demanda* ascendía a $227,277.03 de principal, los intereses al 6.25% acumulados desde el 1 de enero de 2018; los cargos por mora; una cantidad equivalente al 10.00% del principal del pagaré para el pago de las costas, los gastos y los honorarios de abogados; cualesquiera otros adelantos que se hagan en virtud del pagaré y la escritura de hipoteca, según pactado, hasta un total saldo de la obligación.

Insatisfecha con la determinación del foro primario, el 19 de diciembre de 2023, la parte apelante presentó una *Urgente Solicitud de Reconsideración de Sentencia emitida de Manera Sumaria conforme [la] Solicitud de Sentencia Sumaria presentada por el BPPR.*[17] Por medio de esta, solicitó que se reconsiderara la *Sentencia* y dejara sin efecto la misma para que el foro primario celebrara una vista evidenciaria sobre la procedencia en derecho de la doctrina de *rebus sic stantibus.* Sostuvo que el Tribunal Supremo de Puerto Rico en *Camacho v. Compañía Popular de Transporte,* 69 DPR 724 (1949), resolvió que un huracán constituía un acto de la naturaleza que no se podía prever ni evitar.

El 20 de diciembre de 2023, el TPI emitió una *Orden,* notificada y archivada en autos ese mismo día,[18] por la cual denegó la solicitud de reconsideración presentada por la parte apelante.

Inconforme con tal determinación, el 19 de enero de 2024, la parte apelante presentó ante esta Curia un recurso de *Apelación Civil* a través de la cual le atribuyó al foro primario la comisión de los siguientes errores:

---

[17] *Íd.*, Anejo 2, págs. 18-26.
[18] *Íd.*, Anejo 3, pág. 27.

**PRIMER ERROR: ERR[Ó] EL TPI AL DECLARAR HA LUGAR TANTO EN EL ASPECTO PROCESAL, COMO EN EL SUSTANTIVO LA SOLICITUD DE SENTENCIA SUMARIA RADICADA POR [EL] BANCO POPULAR DE PUERTO RICO CUANDO DEL EXPEDIENTE DE AUTOS Y DE LOS DOCUMENTOS SOMETIDOS POR LOS DEMANDADOS – APELANTES EN SU OPOSICI[Ó]N A SENTENCIA SUMARIA SE DESPRENDEN LAS SERIAS CONTROVERSIAS DE HECHO QUE IMPIDEN QUE SE DISPONGA EN LOS M[É]RITOS DE LA PRESENTE ACCI[Ó]N MEDIANTE UN MECANISMO SUMARIO. EN ESPECIAL ANTE LA FALTA DE CONSIDERACI[Ó]N AL REITERADO RECLAMO DE LA PARTE DEMANDADA APELANTE DE QUE SE APLIQUE LA DOCTRINA DE REBUS SIC STANTIBUS LA CUAL DICHO FORO DEB[Í]A A[T]ENDER EN LOS M[É]RITOS EN UNA VISTA EVIDENCIARIA PARA EVALUAR LOS CRITERIOS DE LA MISMA, CONFORME A DERECHO.**

**SEGUNDO ERROR: ERR[Ó] EL TPI AL EMITIR UNA SENTENCIA Y DENEGAR EN LA MISMA LA APLICACIÓN DE LA DOCTRINA JURISPRUDENCIAL DE REBUS SIC STANTIBUS LA CUAL REQUIERE QUE EL FORO DE INSTANCIA RECIBA PRUEBA EN UNA VISTA EVIDENCIARIA Y ANALIZAR SI SE CUMPLEN LOS CRITERIOS PARA LA APLICACI[Ó]N DE LA MISMA.**

En síntesis, la parte apelante arguyó que está en controversia cuándo incumplió con el contrato de préstamo, pues sostuvo que dejó de pagar en octubre de 2017 y no en enero de 2018. También alegó que estaban en controversia la cantidad adeudada, al igual que los hechos que demuestran que procede la aplicación de la doctrina *rebus sic stantibus*, por lo que procedía denegar la solicitud de sentencia sumaria del BPPR. Sostuvo también que el caso de marras no era un caso típico de ejecución de hipoteca por incumplimiento injustificado con el contrato de préstamo, pues pagó su propiedad por quince (15) años puntualmente y sin un solo atraso hasta que su propiedad fue destrozada por el Huracán María. Evento que sostuvo que fue imprevisible. Continuó alegando la parte apelante que, si los huracanes fuesen previsibles, lo cual niega, el Huracán María fue el primer huracán categoría 5 que azotó la isla. Por último, reiteró los mismos planteamientos sobre cómo se cumplen los requisitos de la referida doctrina, y que, por ello,

procede su aplicación al pleito de epígrafe. También sostuvo que aplica la doctrina porque:

> **Cuando la justicia requiere la intervención de los tribunales conforme a la equidad y la buena fe porque desaparece la base del negocio y falla la causa del contrato, la posibilidad de moderar el contrato rebasa el campo de lo subjetivo y los tribunales no están limitados por los criterios elaborados en Casera Foods, Inc. v. E.L.A., supra, para la aplicación de la cláusula rebus. . . sic stantibus.**[19] (Énfasis en el original).

Por su parte, el 23 de febrero de 2024, compareció el BPPR por medio del *Alegato de la Parte Apelada en Relación con el Recurso de Apelación* donde sostuvo que no existe controversia de hechos respecto a las cuantías y la fecha desde la cual se adeudan las mismas. Arguyó que la parte apelante en su oposición a la solicitud de sentencia sumaria reconoció haber pagado puntualmente hasta octubre de 2017. También arguyó que por motivo de moratoria solicitó de la parte apelante un solo pago final ante el vencimiento del préstamo, razón por la cual tiene derecho a reclamar la cantidad de $227,277.03 en principal, los intereses acumulados desde el 1 de enero de 2018, más otros. El BPPR también alegó que el incumplimiento con cualquiera de los requisitos de la doctrina basta para que no se revise el convenio bajo *rebus sic stantibus*. Continuó arguyendo que no se cumplen con al menos dos (2) requisitos; siendo estos, la imprevisibilidad, pues sostuvo que los huracanes son previsibles en nuestra isla; y que el contrato de préstamo no es de tracto sucesivo, sino único.

Luego de revisar los documentos que obran en autos, estamos en posición de resolver, primero delimitando el trasfondo normativo aplicable.

---

[19] *Apelación Civil*, págs. 14-15.

## II.

## A.

La solicitud de sentencia sumaria "es un mecanismo procesal que posibilita la ágil disposición de casos sin la celebración de un juicio, siempre que no [se] presenten controversias genuinas de hechos materiales". *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120; *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 334 (2021). Esta solicitud podrá ser presentada a favor de la parte reclamante o a favor de la parte contra quien se reclame. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, y Regla 36.2 de Procedimiento Civil, *supra*, R. 36.2. En cuanto a la parte reclamante, esta podrá presentar dicha solicitud de sentencia sumaria en cualquier momento luego de haber transcurrido veinte (20) días a partir de la fecha de emplazamiento de la parte demandada, o después que la parte demandada haya notificado su propia solicitud de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite impuesta por el tribunal para culminar el descubrimiento de prueba. Regla 36.1 de Procedimiento Civil, *supra*. Por su parte, la parte contraria podrá presentar la suya, a partir de la fecha en que fue emplazado, pero no más tarde de treinta (30) días luego de la fecha límite para terminar el descubrimiento de prueba. Regla 36.2 de Procedimiento Civil, *supra*.

Por otro lado, la parte que conteste este tipo de moción deberá hacerlo dentro del término de veinte (20) días desde la notificación de la solicitud de sentencia sumaria. Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3 (b).

Ahora bien, a tenor con la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), procede dictar una moción de sentencia sumaria "sentencia sumaria si las alegaciones, deposiciones,

contestaciones a interrogatorios y admisiones ofrecidas, así como las declaraciones juradas y alguna otra evidencia, si las hubiese, confirman la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente, y si el derecho aplicable así lo justifica". Véase, además, *Birriel Colón v. Supermercado Los Colobos*, *supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Para ello, será necesario que la parte promovente establezca su derecho con claridad y demuestre que no existe controversia sustancial o real respecto a algún hecho material. *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110. En esa misma línea, nuestro más alto foro ha establecido que, un hecho material es "aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones. *Birriel Colón v. Supermercado Los Colobos, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. Aun así, aunque no se presente prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, pág. 337.

A tenor con lo anterior, y como asunto de umbral, es meritorio reiterar el estándar de revisión que este Tribunal debe seguir al

momento de revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

En primer lugar, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra*, R. 36, le exige al foro *a quo*. Sin embargo, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Aun así, la revisión por parte de este Tribunal es *de novo* y debemos examinar el expediente de la forma más favorable hacia la parte que se opuso a la moción de sentencia sumaria, "llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 116.

Segundo, al encontrarnos en la misma posición que el foro *a quo*, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

Tercero, nuestro Tribunal debe revisar si en realidad existen hechos materiales en controversia. Íd. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Íd.

Cuarto y último, si este Tribunal encuentra que los hechos materiales están incontrovertidos, debemos revisar *de novo* si el TPI aplicó correctamente el derecho. Íd., pág. 119.

**B.**

Por otro lado, nuestro más alto foro ha establecido que en nuestra jurisdicción rige el principio de libertad de contratación o de autonomía de la voluntad. Precisamente, bajo el principio de *pacta*

*sunt servanda*, las partes contratantes podrán establecer pactos, cláusulas y condiciones que tengan por convenientes, siempre que lo pactado no sea contrario a la ley, la moral y las buenas costumbres. Artículo 1207 del *"Código Civil de Puerto Rico" Edición de 1930* (en adelante, Código Civil de 1930), 31 LPRA sec. 3372 (derogado); *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 187 (2022); *Engineering Services International, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico*, 209 DPR 1012, 1027 (2022).

Además, para que un contrato tenga validez el mismo requiere la concurrencia de tres (3) elementos; a saber: el consentimiento de los contratantes, un objeto cierto y la causa de la obligación. Artículo 1213 del Código Civil de 1930, *supra*, sec. 3391 (derogado); *SLG Irizarry v. SLG García*, 155 DPR 713, 723 (2001). Después del perfeccionamiento de un contrato, las partes quedarán obligadas a cumplir con lo expresamente pactado y con las consecuencias que se deriven del mismo, a tenor con la buena fe, al uso y a la ley. Artículo 1210 del Código Civil de 1930, *supra*, sec. 3375 (derogado); *Álvarez v. Rivera*, 165 DPR 1, 18 (2005); *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Lo anterior pues, "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Artículo 1044 del Código Civil de 1930, *supra*, sec. 2994 (derogado); véase, además, *Universal Insurance Company v. Popular Auto, LLC*, 207 DPR 228, 238-239 (2021); *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018). Consecuentemente, aquellos que de alguna forma contravengan sus obligaciones, deberán indemnizar por los daños y perjuicios causados. Artículo 1054 del Código Civil de 1930, *supra*, sec. 3018 (derogado); *Álvarez v. Rivera, supra*, pág. 18.

Por otro lado, "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Artículo 1233 del Código Civil de

1930, *supra*, sec. 3471 (derogado); *Rodríguez García v. UCA, supra*, pág. 944; *Pepsi-Cola v. Mun. Cidra*, 186 DPR 713, 752 (2012). Del mismo modo, "[s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas". Artículo 1233 del Código Civil de 1930, *supra* (derogado); *Rodríguez García v. UCA, supra*, pág. 944; *VDE Corporation v. F & R Contractors*, 180 DPR 21, 34-35 (2010). Además, para juzgar la intención de los contratantes, se deberán tomar en consideración los actos y las circunstancias previos a la otorgación del contrato que puedan indicar la voluntad de los contratantes. Artículo 1234 del Código Civil de 1930, *supra*, sec. 3472 (derogado); *Pepsi-Cola v. Mun. Cidra, supra*, pág. 752.

## C.

La doctrina de *rebus sic stantibus* sirve para atemperar la inflexibilidad y rigidez del principio de *pacta sunt servanda* permitiéndole a los tribunales a intervenir en un contrato y evitar que se lacere la buena fe o se provoque una injusticia al obligar un cumplimiento específico. *Oriental Bank v. Perapi*, 192 DPR 7 (2014) (*citando a BPPR v. Sunc. Talavera*, 174 DPR 686, 694 (2008)). Esta doctrina se encuentra implícita en los contratos y representa un contrapeso al absolutismo que surge de sostener la voluntad de las partes a base al principio de *pacta sunt servanda. Oriental Bank v. Perapi, supra* (*citando a Casera Foods, Inc. v. E.L.A., supra*, pág. 854. Nuestro máximo foro ha reiterado que para que se aplique la doctrina de *rebus sic stantibus* es necesario que concurran los siguientes requisitos: (1) que ocurra una circunstancia imprevisible como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual constituye un requisito fundamental; (2) el cumplimiento con las prestaciones de un contrato sea extremadamente oneroso; (3) no se trate de un contrato aleatorio o haya un elemento de riesgo que sea determinante; (4)

ninguna de las partes haya incurrido en algún acto doloso; (5) sea un contrato de tracto sucesivo o que esté referido a un momento futuro; (6) la alteración de las circunstancias sea posterior a la celebración del contrato y que se presente un carácter de cierta permanencia; y (7) una parte invoque la aplicación de la doctrina. *Oriental Bank v. Perapi, supra*, pág. 17; *BPPR v. Sunc. Talavera, supra*, pág. 707; *Casera Foods, Inc. v. E.L.A., supra*, pág. 856. Una vez concurren estos requisitos, algunos de los remedios son la suspensión temporera de los efectos del contrato, su resolución o recisión, revisión de precios, la suspensión o moratoria, entre otros, que los tribunales estimen como justos y equitativos. *Oriental Bank v. Perapi, supra*, pág. 18; *Casera Foods, Inc. v. E.L.A., supra*, pág. 857. No empece a lo anterior, el Tribunal Supremo de Puerto Rico ha resuelto que cuando se alteran las bases del negocio de forma que desaparezca la causa del contrato y las prestaciones entre las partes contratantes se tornen desproporcionales, no tienen que concurrir todos los requisitos. *Oriental Bank v. Perapi, supra*, págs. 18-19; *BPPR v. Sunc. Talavera, supra*, pág. 715; *Casera Foods, Inc. v. E.L.A., supra*.

Aun así, la doctrina de *rebus sic stantibus "se trata de un remedio de excepción, para situaciones extraordinarias en que se impone un prudente y escrupuloso discernimiento judicial de moderación"*. *Oriental Bank v. Perapi, supra*, pág. 19 (Énfasis en el original) (*citando a Casera Foods, Inc. v. E.L.A., supra*, pág. 857); *BPPR v. Sunc. Talavera, supra*, pág. 715; *Mun. de Ponce v. A.C. et al.*, 153 DPR 1, 36-37 (2000). A pesar de que pueden surgir circunstancias que ameriten dicha doctrina, "la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones económicas". *Oriental Bank v. Perapi, supra*, págs. 19-20 (*citando a BPPR v. Sunc. Talavera, supra*, pág. 696). Por lo tanto, "en todo caso en donde se

contemple la aplicación de la excepcional norma, es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible". *Oriental Bank v. Perapi*, *supra*, pág. 20.

Ahora bien, en materia de daños y perjuicios, se ha definido la defensa de fuerza mayor como "algo que se ocasiona exclusivamente por la violencia de la naturaleza, por una fuerza de los elementos que la capacidad humana no puede prever ni impedir, como por ejemplo por un relámpago, un tornado, una tromba marina, un huracán o por cosas similares". *Camacho v. Compañía Popular de Transporte*, Inc., *supra*, pág. 729. También se ha definido como "ese suceso eximente de responsabilidad--por razón de que no puede preverse o que previsto no puede evitarse--". *Rivera v. Caribbean Home Const. Corp.*, 100 DPR 106, 110 (1971). En esa misma línea, en *Rivera v. Caribbean Home Const. Corp.*, *supra*, pág. 118, nuestro más alto foro expresó que, "[h]ay fenómenos naturales tan vastos o tan fuertes cuyos terribles efectos la ciencia humana no puede evitar, pero la razón y los propios hechos demuestran que el caso de autos no es uno de esos". Para calificar los fenómenos naturales como eximentes de responsabilidad:

> [E]s necesario considerar las otras circunstancias que concurren en cada caso, como por ejemplo, el carácter frecuente o probable del fenómeno, o por el contrario su carácter inopinado o insólito; si se tomaron las medidas que aconseja la prudencia y la ciencia para evitar el daño o si no se tomaron, etc. *Rivera v. Caribbean Home Const. Corp.*, *supra*, págs. 118-119; M. García Cárdenas, *El Nuevo Derecho de Obligaciones y Contratos: Código Civil 2020*, 1ª ed. rev., San Juan, Ed. M.J. Editores, 2021, pág. 230.

**Por otra parte, el Tribunal Supremo de Puerto Rico resolvió que la crisis económica de Puerto Rico <u>no puede</u> servir como fundamento para aplicar la cláusula de *rebus sic stantibus* y modificar los términos de un contrato por la vía judicial**. *Oriental Bank v. Perapi*, *supra*, pág. 27. Lo anterior, pues, "las

fluctuaciones del mercado y los giros que da la economía son eventos cíclicos que hacen de una crisis económica un evento previsible". Íd. Además, expresó que permitir una crisis económica, sin más, como fundamento para ignorar el principio de *pacta sunt servanda* y aplicar *rebus sic stantibus* implicaría convertir la excepción en la norma "con la fatal consecuencia de crear caos e incertidumbre en las relaciones contractuales en nuestra jurisdicción". *Oriental Bank v. Perapi, supra*, pág. 28. Por lo tanto, resolvió que la crisis económica, sin más, no puede considerarse como una circunstancia imprevisible, por lo que no puede servir como fundamento suficiente para que los tribunales apliquen la cláusula de *rebus sic stantibus*.

**D.**

Es harto conocido que la hipoteca es un derecho indivisible y accesorio. *Haedro Castro v. Roldán Morales*, 203 DPR 324, 341 (2019); *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96, 110 (2016). Se ha reconocido la hipoteca también como:

> [U]n derecho real que, ya de momento, sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes [...], ajenos y enajenables, que permanecen en posesión de su propietario o titular, y el cual implica un poderoso instrumento del crédito territorial. *Delgado Pol v. Pietri Vélez*, 208 DPR 557, 573 (2022) (*citando a* R.M. Roca Sastre y otros, *Derecho Hipotecario*, Barcelona, Ed. Bosch, 2008, T. II, Vol. 1, pág. 429)).

Asimismo, "[l]a hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fue constituida". Artículo 1775 del Código Civil de 1930, *supra*, sec. 5043 (derogado); *DLJ Mortgage Capital, Inc., v. García Ramos, supra*, pág. 53. La hipoteca garantiza una obligación pecuniaria y recae directamente sobre bienes inmuebles, ajenos y enajenables. *Dist. Unidos Gas v. Sucn. Declet Jiménez, supra*, pág. 110; *Westernbank v. Registradora*,

174 DPR 779, 784 (2008). A su vez, la constitución de las hipotecas depende de varios requisitos esenciales; a saber:

> **(1)** Que se constituya para asegurar el cumplimiento de una obligación principal.
> **(2)** Que la cosa pignorada o hipotecada pertenezca en propiedad a la persona al que la empeña o la hipoteca.
> **(3)** Que las personas que constituyan la prenda o hipoteca tengan la libre disposición de sus bienes o, en caso de no tenerla, se hallen legalmente autorizadas al efecto. Artículo 1756 del Código Civil de 1930, *supra*, sec. 5001 (derogado) (Énfasis en el original); *Dist. Unidos Gas v. Sucn. Declet Jiménez, supra*, pág. 110; *Westernbank v. Registradora, supra*, pág. 784.

Por ello, es un requisito esencial que para que se constituya la hipoteca válidamente, el documento en que se constituya tiene que ser inscrito en el registro de la propiedad. Artículo 1774 del Código Civil de 1930, *supra*, sec. 5042 (derogado); véase, además, *Delgado Pol v. Pietri Vélez, supra*, pág. 573; *DLJ Mortgage Capital, Inc. v. García Ramos, supra*, pág. 54; *Soto Sola v. Registradora*, 189 DPR 653, 662 (2013); *Haedo Castro v. Roldán Morales, supra*, pág. 341; *Dist. Unidos Gas v. Sucn. Declet Jiménez, supra*, pág. 110. Incluso, "[s]u dependencia a la obligación principal es de tal grado que, si la primera es nula o inexistente, la hipoteca también será nula o inexistente". *Soto Sola v. Registradora, supra*, pág. 662.

Por otro lado, por medio del contrato de préstamo:

> [U]na de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo.

> Artículo 1631 del Código Civil de 1930, *supra*, sec. 4511 (derogado); *Torres, Torres v. Torres Serrano*, 179 DPR 481, 492 (2010); véase, además, Artículo 1124 del Código Civil de 1930, *supra*, sec. 3174 (derogado).

Analizada la controversia bajo el marco doctrinal previamente esbozado, nos hallamos en posición de resolver.

### III.

Según se relató, la parte apelante presentó una *Urgente Solicitud de Reconsideración de Sentencia emitida de Manera*

*Sumaria conforme [la] Solicitud de Sentencia Sumaria presentada por el BPPR* el 19 de diciembre de 2023. Fundamentó su solicitud en que el Tribunal Supremo de Puerto Rico en *Camacho v. Compañía Popular de Transporte, supra,* resolvió que un huracán constituía un acto de la naturaleza y que no había forma de preverlo, ni evitarlo. Además, reiteró que concurrían todos los requisitos necesarios para la aplicación de la doctrina de *rebus sic stantibus* y que, para ello, era necesario que el foro primario celebrara una vista evidenciaria sobre la procedencia en derecho de dicha doctrina. Sin embargo, el TPI denegó su solicitud de reconsideración. Fundamentó su dictamen en que no era de aplicación la cláusula de *rebus sic stantibus* porque no se cumplieron a cabalidad los requisitos expuestos por nuestro más alto foro en *Casera Foods, Inc. v. ELA, supra*; a saber, la imprevisibilidad y un contrato de tracto sucesivo. Además, concluyó que no existían hechos en controversia, por lo cual dictó una sentencia sumaria a favor del BPPR.

Inconforme, la parte apelante acudió en revisión ante nos.

Tras un análisis sosegado de la normativa aplicable, los hechos aplicables y del expediente ante nuestra consideración, concluimos que el foro primario no incidió al declarar con lugar la *Demanda* del caso de epígrafe.

Como se expuso en la sección anterior, como asunto de umbral es meritorio que sigamos el estándar de revisión establecido en *Meléndez González et al. v. M. Cuebas, supra.* En primer lugar, nos encontramos en la misma posición que el TPI para revisar las mociones de sentencia sumaria, por lo que la revisión es *de novo*. El segundo pilar es revisar que tanto la solicitud de sentencia sumaria como su oposición cumplan con la Regla 36 de Procedimiento Civil, *supra*. En el presente caso, ante el cumplimiento de estas mociones con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, pasamos al tercer paso. Este es, revisar si en realidad existen

hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. En el presente caso, el TPI emitió una *Sentencia* por la cual reconoció los siguientes hechos como incontrovertidos y suficientes para conceder la sentencia sumaria a favor del BPPR:

> De otra parte, la prueba que obra en autos demuestra que no existe controversia en el hecho de que existe una obligación valida entre las partes. Tampoco existe controversia en el hecho de que la parte demandada incumplió con los términos y condiciones de la obligación[.] En el presente caso, se ha demostrado, fuera de toda controversia, que la parte demandada suscribió una obligación mediante pagaré por la cantidad de $306,000.00, que para garantizar dicha obligación se constituyó hipoteca sobre el inmueble descrito previamente. Además, la parte demandada no ha alegado ni probado defensa o reclamación por resarcimiento de clase alguna que l[a] excuse del pago de la deuda, por lo que no existe controversia en que la parte demandada ha incumplido con el pago mensual según fue pactado. Surge del expediente que la parte demandante es la tenedora de buena fe del referido pagaré. Tampoco existe controversia en torno al balance adeudado ya que surge del expediente una declaración jurada que expone las sumas de dinero adeudadas por la parte demandada. De la Declaración Jurada de la parte demandante surge que la parte demandada ha incurrido en el incumplimiento de su obligación habiendo dejado de pagar las mensualidades vencidas desde el día 1ro de enero de 2018, hasta el día de hoy, sin que se efectuara el pago de las mismas a pesar de los avisos y oportunidades concedidas, por lo que la parte demandante ha declarado vencida la totalidad de la deuda ascendente a la suma de $227,277.03 de principal, más los intereses acumulados desde el 1 de enero de 2018; más los cargos por mora; más una cantidad equivalente al 10.00% del principal del pagaré para el pago de las costas, gastos y honorarios de abogados; más cualesquiera otros adelantos que se hagan en virtud del pagaré y la escritura de hipoteca, según pactado, hasta el total saldo de la obligación.[20]

En efecto, del expediente se desprende prueba suficiente para confirmar dichos hechos como incontrovertidos. Según surge del pagaré otorgado el 30 de diciembre de 2002, R-G Premiere Bank of Puerto Rico se comprometió a pagarle a la señora Lozada Ramírez

---

[20] Apéndice de la *Apelación*, Anejo 1, págs. 15-16.

una suma de $306,000.00 con intereses sobre el balance insoluto del principal desde la fecha de dicho pagaré hasta su pago a razón del 6.25% anual. También se desprende del mismo que la señora Lozada Ramírez se comprometió a pagarle el principal e intereses pagaderos a R-G Premiere Bank of Puerto Rico o en cualquier otro lugar que el tenedor de dicho pagaré indique por escrito. Esto es, ella tenía que realizar los pagos en plazos mensuales consecutivos de $1,884.09 el primer día de cada mes desde el 1ro de enero de 2003 hasta que se pagara totalmente la deuda evidenciada por el presente, si no se pagaba antes. Además, surge de dicho pagaré que, de radicarse un procedimiento judicial para el cobro de dicho pagaré, el tenedor tendrá derecho a cobrar por medio de dicho pleito la suma pactada líquida de un 10% de la suma original de principal del presente para cubrir las costas y gastos del aludido pleito incluyendo los honorarios de abogado.

Por otro lado, del pagaré, el cual también fue firmado por el señor Castro Báez como co-deudor, surge que:

> Si cualquier plazo mensual bajo este Pagaré no es pagado cuando venza y permanece impago luego de la fecha especificada en la notificación al Deudor, la suma total de principal pendiente de pago e intereses acumulados sobre la misma quedarán inmediatamente vencidos y pagaderos a opción del tenedor de este Pagaré.[21]

A su vez, este pagaré estaba garantizado por una Primera Hipoteca fechada el 30 de diciembre de 2022 otorgada sobre el apartamento número 21 de la señora Lozada Ramírez localizado en el condominio Palmarina Club en Palmas del Mar en Humacao. Tal como surge de las cartas de cobro cursadas al señor Castro Báez por parte del BPPR y del historial de pago de la parte apelante, surge una cantidad principal de $227,277.03 adeudada desde el 1 de enero de 2018. Sin embargo, tal como determinó el foro *a quo,* la

---

[21] *Íd.*, Anejo 5, pág. 41.

parte apelante no probó defensa o reclamación por resarcimiento de clase alguna que la excusara del pago de la deuda. Por lo tanto, no existe duda sobre la cantidad adeudada, ni desde cuándo se adeuda. Más importante aún, no existe controversia respecto a que la parte apelante incumplió con el pago mensual según fue pactado.

Como se expuso en la sección anterior, la doctrina de *rebus sic stantibus* sirve para permitirles a los tribunales a intervenir en un contrato y evitar que se lacere la buena fe o se provoque una injusticia al obligar un cumplimiento específico. Del mismo modo, nuestro máximo foro ha reiterado que para que se aplique la doctrina de *rebus sic stantibus* es meritorio que concurran varios requisitos incluyendo que ocurra una circunstancia imprevisible como una cuestión de hecho dependiente de las condiciones que concurran en cada caso, lo cual, a su vez, constituye un requisito fundamental. La excepción a tal concurrencia de requisitos es cuando se alteran las bases del negocio de forma que desaparezca la causa del contrato y las prestaciones entre las partes contratantes se tornen desproporcionales. Aun así, "la obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones económicas". *Oriental Bank v. Perapi, supra*, págs. 19-20 (*citando a BPPR v. Sunc. Talavera, supra*, pág. 696). Por ello, "en todo caso en donde se contemple la aplicación de la excepcional norma, es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible". *Oriental Bank v. Perapi, supra*, pág. 20. Ahora bien, aunque en *Camacho v. Compañía Popular de Transporte*, Inc., *supra*, pág. 729, el Tribunal Supremo de Puerto Rico expresó que un ejemplo de fuerza mayor son los huracanes, **en *Oriental Bank v. Perapi, supra*, pág. 27, resolvió que la crisis económica de Puerto Rico no es fundamento para aplicar la doctrina de *rebus sic stantibus*.**

En el presente caso, la parte apelante no demostró como los alegados daños causados a su apartamento por el paso del Huracán María imposibilitaron los pagos mensuales según pactado por medio del contrato de préstamo. Sin embargo, sostuvo que no pudo pagar las mensualidades de la hipoteca a partir del paso del Huracán María y la pandemia del COVID-19 por los daños sufridos por el inmueble y **el impacto severo que tuvo en la compareciente los meses que estuvo sin poder trabajar y la merma sustancial en sus ingresos**. A tenor con la jurisprudencia actual, la crisis económica no es óbice para incumplir con los pagos según estipulados por medio de un contrato de préstamo. Como expresó el Tribunal Supremo, "[p]ermitir que una crisis económica, sin más, sirva como fundamento para ignorar la máxima *pacta sunt servanda* y aplicar la cláusula *rebus sic stantibus* implicaría convertir la excepción en la norma, con la fatal consecuencia de crear caos e incertidumbre en las relaciones contractuales en nuestra jurisdicción". *Oriental Bank v. Perapi*, *supra*, pág. 28.

Parecido a los hechos del caso de marras, en *Oriental Bank v. Perapi*, *supra*, una compañía, por medio de su presidente, y el banco Eurobank otorgaron un contrato de préstamo, el cual fue garantizado, en parte, por un contrato de prenda por el que la compañía le entregó a Eurobank seis (6) pagarés hipotecarios para responder por sus obligaciones. Ante el incumplimiento de la compañía con los términos del aludido contrato de préstamo, Oriental Bank, como sucesor en interés de Eurobank, presentó una acción civil en cobro de dinero y ejecución de prenda e hipoteca en contra de la compañía y demás recurridos. Por medio de su *Contestación a Demanda y Reconvención*, los recurridos alegaron que aplicaba la cláusula de *rebus sic stantibus* debido al estado de la economía. Eventualmente, Oriental Bank presentó una *Solicitud para que se Dicte Sentencia Sumaria* y los recurridos, por su parte,

presentaron su oposición. Por medio de dicha oposición, estos arguyeron que la crisis económica era un hecho imprevisible que afectó, en parte, su capacidad de repago. Ante todo, el TPI dictó una *Sentencia* por la que concluyó que no estaba en controversia que los recurridos incumplieron con su obligación de pagar el préstamo según estipulado en el contrato. Además, determinó que no aplicaba la doctrina de *rebus sic stantibus* y procedió a dictar sentencia sumaria a favor de Oriental Bank. Los recurridos presentaron una solicitud de reconsideración ante el foro primario y fue denegada. Así las cosas, presentaron un recurso de apelación ante este Tribunal, el cual entendió que "no procedía resolver el pleito de autos sumariamente, pues podrían estar en controversia hechos materiales que afectarían la procedencia de la defensa afirmativa de *rebus sic stantibus*". *Oriental Bank v. Perapi, supra,* pág. 14. Inconforme con dicho dictamen, Oriental Bank presentó un recurso de apelación ante el Tribunal Supremo de Puerto Rico. Nuestro más alto foro expresó que:

> Debido a que la situación económica adversa de la Isla nos afecta a todos, **caracterizar la crisis actual como una circunstancia imprevisible y aplicar la doctrina conllevaría a que todos estuviéramos excusados de pagar nuestros hogares, automóviles, tarjetas de crédito y cualquier otra deuda en la que hayamos incurrido previo al advenimiento de la crisis económica en Puerto Rico**. *Oriental Bank v. Perapi, supra,* pág. 28. (Énfasis suplido).

Consiguientemente, resolvió que "*la crisis económica, sin más, no puede considerarse como una circunstancia imprevisible, por lo que no puede servir como fundamento suficiente para que los tribunales procedan a modificar los términos de un Contrato mediante la cláusula 'rebus sic stantibus'*". Íd. (Énfasis en el original).

En el caso de epígrafe, la parte apelante estaba obligada a cumplir con lo convenido mediante el contrato de préstamo garantizado, a través de un pagaré hipotecario en caso de un posible incumplimiento. Consecuentemente, el foro primario no incidió al

rechazar la aplicación de la doctrina de *rebus sic stantibus* al caso de marras y conceder la sentencia sumaria a favor del BPPR.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones